## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MATTHEW DORY,**

    **Plaintiff,**

vs.                                                        **Case No. 6:22-cv-1496**

**UNITED AIRLINES,**

    **Defendant.**

## AMENDED COMPLAINT AND JURY DEMAND

### I. INTRODUCTION

1. Defendant United Airlines unlawfully and willfully terminated Plaintiff Matthew Dory in furtherance of the airline's discriminatory policies against white males, especially those considered older.

2. United Airlines has openly declared its discriminatory policies against white males, both within the company and in its marketing.

3. Mr. Dory, an older, white male, was a victim of these policies.

4. In his thirty-three (33) years of service to United Airlines, Mr. Dory never once received a disciplinary write-up, but had received awards of appreciation for his service from the airline.

5. As a result of Defendant's illegal conduct, Plaintiff has suffered loss of wages and benefits, humiliation, severe emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

### II. JURISDICTION AND VENUE

6. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and under 28

U.S.C. § 1343 (civil rights).

7. The acts or omissions comprising the basis of this suit having occurred in Orange County, Florida and in this judicial district, venue is proper in this Court under 28 U.S.C. § 1391.

8. This action is authorized and instituted pursuant to Title VII, 42 U.S.C. § 2000(e), *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq*.

### III. ADMINISTRATIVE PREREQUISITES

9. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and has received his Notice of Right to Sue. Thus, all administrative prerequisites have been met and exhausted. This case is timely filed.[1]

### IV. PARTIES

10. Matthew Dory is a citizen of the United States and was, at all relevant times, a resident of and domiciled in the State of Florida, and a current or former employee of United.

11. Matthew Dory is a white male born May 14, 1967.

12. Defendant United Airlines, Inc. has continuously been an employer within the meaning of Title VII and the ADEA at all relevant times.

---

[1] Plaintiff filed a Charge of Discrimination on September 1, 2021 with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"), within 300 days of the dateof the adverse actions for which recovery is sought that is c o m p l a i n e d o f h e r e i n (the earliest of which occurred on July 10, 2020). Plaintiff re-filed the Charge on October 2, 2021, within 300 days of the date of the adverse actions complained of herein. Exhibit A.
  In its Position Statement to the EEOC, Defendant contended that the final date of adverse action was September 10, 2020, the date United Airlines sent a "termination letter" to Plaintiff. As Plaintiff noted to the EEOC, however, this was not the actual date of termination but the opening of negotiations. Plaintiff contends that the actual final date of adverse action was March 30, 2021, the date of Plaintiff's actual termination and the end of negotiations between Plaintiff and Defendant.
  Dory received the Notice of Right to Sue from the EEOC on June 08, 2022; which Notice was dated 25 May 2022. Exhibit A. Therefore, this suit is timely filed within the 90 days allowed from the receipt of this right to sue letter.

## V. FACTUAL ALLEGATIONS

### United's Company-Wide, Discriminatory Policies against White Men

13.     Mr. Dory was discriminated against by United Airlines and its employees on the basis of his race, sex, and age for being a white male over forty (40) in a company implementing policies overtly contrary to the job security of older white males.

14.     Not only has United Airlines been vocally supportive of Black Lives Matter, a terrorist group overtly hostile to white Americans, but the company has gone so far as to create entire programs devoted to discriminating against white males.

15.     For instance, in the most infamous case, United Airlines has purchased a flight school and developed a pilot training program – but has publicly boasted that its criteria are primarily based on minority status, not merit. The goal of this program, United Aviate Academy,[2] is not to recruit the most qualified candidates as future United Airlines pilots. Rather, United Airlines "[plans] for 50% of the 5,000 pilots [they] train in the next decade to be women or people of color."[3] In the current year, 2021, only 7% of United Airlines' pilots are women, and only 13% are non-white. In order to push white males down to a mere 50% of pilots, United Airlines must enact severe policies of discrimination based on race and sex.

16.     When publicly criticized for this policy, the response of United Airlines was: "All the highly qualified candidates we accept into the Academy, regardless of race or sex, will have met or exceeded the standards we set for admittance."[4] In other words, United Airlines has set

---

[2] United Aviate Academy, https://unitedaviate.com/aviate-program-career-paths/united-aviate-academy/ (last accessed Aug. 13, 2021).
[3] United Airlines (@united), Twitter (Apr. 6, 2021, 9:30 AM), https://twitter.com/united/status/1379426304857141250
[4] United Airlines (@united), Twitter (Apr. 6, 2021, 9:49 AM), https://twitter.com/united/status/1379431009398054917

minimum standards for applicants instead of seeking the most qualified applicants, turning the process of becoming a pilot on its head in the pursuit of racial "equity," the term "equality" having been abandoned.

17. Mr. Dory is not a pilot. But he was, for thirty-three (33) years, an employee of United Airlines, which has actively sought to recruit from within its own ranks for United Aviate Academy. Because of the propaganda, or marketing, disseminated from United Airline's corporate offices in Chicago, Illinois, both within the company and to the outside world, the message to United Airlines employees was clear: Do not bother applying for the pilot training program if you are a white male.

18. This policy for United Aviate Academy was announced on April 6, 2021. Mr. Dory's last job action was March 30th, a week earlier. The program of United Airlines to replace white male pilots with minorities and women over the next ten years cannot be separated from the discrimination against Mr. Dory. United Airlines has become a primary example of the systemic racism it publicly claims to abhor.

19. Whether CEO Scott Kirby was aware of Mr. Dory's particular case or not is irrelevant: he created the conditions at United Airlines for this discrimination. Since Mr. Dory's termination, Mr. Kirby has pushed the racially discriminatory policies of United Airlines full throttle. On April 6, 2021, Mr. Kirby posted to his personal LinkedIn profile the discriminatory policies of the pilot training program.[5]

20. Later that month, Ms. Jessica Kimbrough, Chief Diversity, Equity[6] and Inclusion Officer for United Airlines, touted the company's efforts "to create real, impactful, sustainable

---

[5] Scott Kirby (https://www.linkedin.com/in/jscott-kirby/), LinkedIn (Apr. 6, 2021), https://www.linkedin.com/posts/jscott-kirby_its-important-that-corporations-dont-just-activity-6785193389928386560-sczU
[6] NB: "equity," not "equality."

change within the company" in an interview with Essence, a magazine for black Americans.[7]

21. On June 19th, United Airlines flew an all-black crew in honor of Juneteenth, on which day United also launched BEACON, the airline's Black Business Resource Group.[8]

22. The pattern of conduct by United Airlines and its leading lights is clearly, overtly, and unapologetically discriminatory against white males.

23. It is for this reason that Mr. Dory was told by Tommy Esposito, Local Business Agent for Teamster 769, that United Airlines was going to make an example out of Mr. Dory.

24. It must be noted that the discriminatory policies of United Airlines are not inferred from circumstantial anecdotes but are explicitly and widely publicized by the company itself. Television ads, social media campaigns, and magazine interviews with United Airlines executives all trumpet the agenda of the company: to "diversify" the workplace by replacing white males. Mr. Dory's termination was neither a legitimate firing for use of naughty language nor an isolated incident of discrimination: the termination was a deliberate display of the company's discriminatory agenda: older, white men are on their way out.

**Events Leading to Mr. Dory's Unlawful Termination**

25. Mr. Dory was hired by Continental Airlines on August 6, 1987 and became an employee of United Airlines in 2012 when the two companies merged.

26. At the time of Mr. Dory's termination, he was stationed at the Orlando International Airport (MCO) in Orlando, Florida.

27. In his thirty-three (33) years with the airline, Mr. Dory never once received a

---

[7] Kimberly Wilson, *United Airlines New Diversity Officer Unveils Roadmap for Racial Equality*, Essence (Apr. 26, 2021), https://www.essence.com/lifestyle/travel/united-airlines-new-unveils-roadmap-for-racial-equality/.
[8] *United Airlines Flies from Houston to Chicago with Special All-Black Crew in Honor of Juneteenth*, CBS Chicago (June 20, 2021), https://www.msn.com/en-us/travel/news/united-airlines-plane-flies-from-houston-to-chicago-with-special-all-black-crew-in-honor-of-juneteenth/ar-AALehNR.

disciplinary write-up. To the contrary, he received commendations from United Airlines.

28. On July 8, 2020, Tim Jackson, one of Mr. Dory's co-workers, started harassing Mr. Dory about his pet dog. This included sending Mr. Dory a picture via text of a dog of the same breed roasting over a fire.

29. On July 9th, Mr. Dory's wife saw the text message and picture. This caused a great deal of discord in the home.

30. On July 11th, Mr. Dory, on his days off and nowhere near the workplace, wrote private text messages to his friends about Tim Jackson, who had sent the offending text message and picture. Mr. Dory's text messages contain colorful language about Tim Jackson and his wife, including racial slurs.

31. On July 12th, Tim Jackson was contacted about these text messages by someone who was not Mr. Dory.

32. From July 14th to July 30th, Mr. Dory worked in a hostile work environment instigated by Franklin Harris, engendered by Tim Jackson, Juan Esquivel, and others, and tolerated, if not encouraged, by management. All were employees of United Airlines.

33. Between July 12th and July 14th, Franklin "Angry Frank" Harris printed the private text messages of Mr. Dory to make pamphlets of them and began distributing them to everyone at work. "Angry Frank," a black male who has been called by his co-workers "The Racist Black Avenger who will overturn every stone in search of racism," deliberately publicized and distributed Mr. Dory's private communications in an effort to create and engender an environment of hostility at United Airlines, especially against Mr. Dory. It was the campaign of "Angry Frank" against Mr. Dory that set in motion the events leading to Mr. Dory's termination from United Airlines.

34. On July 14th, Tim Jackson wrote a text message to Mr. Dory complaining of Mr. Dory's behavior.

35. On July 15th, Mr. Dory responded to this text message. According to his own statement, Mr. Jackson found the response unsatisfying and determined to confront Mr. Dory in person the following day.

36. On July 16th, Mr. Dory was cornered by co-workers Tim Jackson and Juan Esquivel, as Tim Jackson yelled at Mr. Dory in a hostile and aggressive manner. This abusive confrontation was overheard by co-workers several doors down. In this confrontation, Mr. Dory was made to fear for his physical safety. Mr. Dory and Mr. Jackson never spoke again after this.

37. On July 30th – two, full, uneventful weeks later – Tim Jackson made an unprovoked statement to United Airlines management, complaining of Mr. Dory's "American right" to make racial slurs when off the clock.

38. Thereafter, Mr. Dory was called into the front office, where Shift Manager Carlos Durand confiscated his badge; which means that Mr. Dory was no longer allowed on the premises and was unable to work. No fact-finding investigation or hearing was ever conducted before taking this extraordinary action.

39. On August 18th, an investigatory meeting was held, and Molly Driscoll of Corporate Security questioned Mr. Dory.

40. On August 19th, Mr. Dory wrote to Molly Driscoll explaining facts he did not feel were fairly elicited in the investigatory meeting.

41. On September 2nd, a fact-finding investigation was conducted by United Airlines management.

42. On September 10th, John Wertz, Director of Technical Operations at MCO for United

Airlines, issued his letter terminating Mr. Dory's employment.

43. Mr. Wertz stated in his letter of September 10, 2020 that Mr. Dory was to be terminated for "[1] harassing and [2] discriminatory text messages about another employee and his wife [3] in a group chat with other co-workers[.]" First and foremost, all of the communications for which Mr. Dory earned the ire of United Airlines were communications outside of work. The text messages were delivered on Mr. Dory's days off, and Mr. Dory was nowhere near the airport. Second, these messages could not possibly be considered "harassing," as Mr. Dory never sent any text messages to the employee in question or to his wife. Third, no group chat amongst employees ever existed: these were private text messages sent from one person to another. It is clear that the true cause of concern for United Airlines is the colorful language used by Mr. Dory.

44. On September 16th, Mr. Dory filed a grievance via the Union in accordance with the collective bargaining agreement. Both United Airlines and the Union failed to abide by the grievance and arbitration procedures as outlined in Articles 19 and 20 of the collective bargaining agreement.

45. Article 19 of the collective bargaining agreement lists the steps of a grievance procedure for an aggrieved employee such as Mr. Dory. Key to this process is the Chief Steward, who in Mr. Dory's case was Mike Blomquist. Employees at United Airlines were witness to Mike Blomquist trashing Mr. Dory for "racism" on the grounds that Mr. Blomquist had an Asian wife. The fact that Mr. Blomquist was denigrating Mr. Dory while being appointed as Mr. Dory's designated representative demonstrates how corrupted the grievance procedure was. It also indicates the level of resolve the Union had in defending Mr. Dory against his unlawful termination. Mr. Blomquist did not recuse himself as Mr. Dory's representative and did not seek to find a replacement. Rather, he "represented" Mr. Dory by throwing him under the bus, as

evidenced in the outcome of the grievance proceedings and the denial of arbitration to Mr. Dory.

46. On February 24, 2021, the grievance was heard by a four-member panel that included Bob Fisher, IBT International Representative; Chris Carrick, Managing Director, SFO; Paul Alves, International Representative; and Mark McLean, Manager, Labor Relations.

47. On March 29th, the Board denied Mr. Dory's grievance.

48. On March 30th, the Union informed Mr. Dory that they would not be seeking arbitration under Article 20 of the collective bargaining agreement. The dubious, unconscionable grounds for the denial of arbitration were that Mr. Dory had not included a "confidentiality statement" in his private text messages. This reasoning, if accepted, would mean that the text messages of every American would be considered public unless followed by a confidentiality statement. This is, of course, insane – but this is the fraudulent justification for terminating Mr. Dory's employment based on private, off-the-clock, off-the-premises text messages with friends.

49. The denial of Mr. Dory's grievance, along with the denial of arbitration, evidences disparate treatment between Mr. Dory and others similarly situated.

50. For instance, a co-worker named Edward Roger Greenwood, against whom Mr. Dory had filed numerous HR complaints for harassment, creation of a hostile work environment, and even literally sabotaging airplanes, was never held accountable for his actions over a span of fifteen (15) years. An illustrative incident is one in which Mr. Greenwood waited for Mr. Dory at the time clock in order to punch out right in front of him, give Mr. Dory the middle finger, and repeatedly scream, "Fuck you!" in his face. When complained of to Shift Manager Carlos Durand, Mr. Durand said, "Sorry, [Mr. Greenwood] was off the clock." *Nota Bene*: Mr. Carlos Durand was the very same Shift Manager who pulled Mr. Dory's badge immediately upon complaint by Tim Jackson.

51. In another instance, Kurt Nichols, a black man employed by United Airlines, called

9

his lead mechanic, Kent Nelson, a white male employed United Airlines, his "Massa" (Ebonics for "Master") in a derogatory way on a regular basis. Nichols repeatedly made racist remarks to Nelson, including, "Don't tie me up in the sun and beat me today, Massa." On another occasion, Nelson asked Nichols about the status of his assignment, to which Nichols responded by falling to his knees and grabbing Nelson's feet, begging Nelson not to beat him, saying, "I know I'm just a lazy nigger, don't bear me, Massa, please don't beat me." Nelson was very upset and tried to free himself from Nichols, who repeated the statement over and over again until Nelson could free himself. The black man was not terminated.

52. In another instance, Ken Sylman, a black man employed by United Airlines, on many occasions called Jim DiGiuseppi, a white man employed by United Airlines, a "fucking cracker." This was witnessed by John Wertz, who wrote the termination letter to Mr. Dory. The black man was not terminated.

53. In another instance, Danilo Paulino, a black man employed by United Airlines, called persons of every race and sexual orientation a "faggot." The black man was not terminated.

54. In another instance, Scott Kern, a transexual, was called a "faggot tranny" by numerous black men employed by United Airlines. None of these black men were terminated.

55. In another instance, Minh Hung, an Asian male employed by United Airlines, while armed with a knife, aggressively approached a black male employed by United Airlines but was stopped before a stabbing occurred. The Asian man was not terminated. Admittedly, he did not use any naughty language.

56. Likewise, multiple people who have gone through the grievance process after drinking on the job (outrageous conduct when working on airplanes), starting physical fights with co-workers, and other dangerous, on-the-clock behavior, have invariably been granted

10

reinstatement or arbitration. That Mr. Dory should be "made an example of" and denied these same basic rights on account of being an older, white male is manifest discrimination.

57. What is more, the disparate treatment of United Airlines toward black males and white males, even in the isolated incidents at issue in this complaint, is concrete.

58. Mr. Dory was terminated for having sent offensive texts to other persons off-the-clock and off-the-premises, in response to actions initiated by Timothy Jackson himself, who was on-the-clock and on-the-premises when he engaged in the misconduct toward Mr. Dory.

59. Mr. Dory was terminated for creating a hostile work environment when in fact it was Franklin Harris who made pamphlets of the offending texts and distributed them at United Airlines with the specific intent of creating a hostile work environment; and Mr. Jackson who created a hostile work environment by physically intimidating Mr. Dory in person at work.

60. Moreover, Mr. Dory's conduct was never directed toward Mr. Jackson; Mr. Jackson's hostile conduct was directed toward Mr. Dory, both in text and in person.

61. The harassment at issue in this case was a one-way street, with Mr. Jackson harassing and intimidating Mr. Dory, never *vice versa*.

62. Neither Mr. Jackson nor Mr. Harris were fired; only Mr. Dory was fired.

63. Both Mr. Jackson and Mr. Harris are black males; Mr. Dory is a white male.

64. The disparate treatment of these employees speaks volumes as to the discriminatory policies of United Airlines against white males.

## **Damages**

65. Mr. Dory has suffered great injury due to the actions of United Airlines and its employees.

66. First, the humiliation of being terminated, the severance of ties between friends and

colleagues, the abrupt termination without cause from a job he worked for thirty-three (33) years, all comprise a traumatic injury, especially as these things would not have been suffered by a non-white person or a female.

67. Second, Mr. Dory was terminated without the benefits to which all employees similarly situated are entitled, including pass travel of any form.

68. Third, being an aircraft technician, Mr. Dory's employment opportunities are limited to working on aircraft at the airport. His special training, his age, and his physical abilities are all factors preventing him from obtaining new work at a comparable rate to what he was being paid at the time of his unlawful termination from United Airlines.

69. Fourth, Mr. Dory has been forced to spend time and attorney's fees in preparing for litigation against United Airlines, which would not have been necessary but for his unlawful termination by the company.

70. Mr. Dory seeks resolution in the form of reinstatement and back pay from the date of his last day of work, July 30, 2020 in the amount of $100,000.00.

71. Because of statutorily impermissible and willful, if not malicious, acts of Defendant and its representatives, Dory has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to Title VII of the Civil Rights Act or 1964 and 1991, as amended and codified at 42 U.S.C. §2000e et seq. ("Title VII").

72. As a consequence of the unlawful and outrageous actions of Defendant, Dory has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish. Dory seeks reinstatement, recovery, compensatory, and equitable (i.e., back pay and front pay) damages, as well as

attorney's fees, and costs and pre and post judgment interest in the maximum amounts allowed by law pursuant to Title VII of the Civil Rights Act of 1964 and 1991, as amended and codified at 42 U.S.C. §2000e et seq. ("Title VII").

## VI. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### RACIAL DISCRIMINATION
**(Violation of Civil Rights Act, Title VII, 42 U.S.C. § 2000e, *et seq.*)**

73. Plaintiff hereby incorporates by reference paragraphs 13 through 72 of this Amended Complaint as if fully set forth herein.

74. Plaintiff is white.

75. Being a white person, Plaintiff was a protected person under the Civil Rights Act at all relevant times.

76. Defendant treated Plaintiff less favorably than his similarly situated non-white counterparts in the terms and conditions of their employment. *Cf.* Amended Complaint, paragraphs 50 through 64.

77. At all relevant times, Plaintiff performed the functions of his job competently and was qualified for his position. *Cf.* Amended Complaint, paragraphs 25 through 27.

78. Defendant has openly declared its discriminatory intent against whites. *Cf.* Amended Complaint, paragraphs 13 through 24.

79. Defendant terminated Plaintiff's employment because of his race. Race was the primary motivating factor in Defendant's decision to terminate Plaintiff. *Cf.* Amended Complaint, paragraphs 13 through 24; 25 through 64.

80. Defendant's articulated reasons for Plaintiff's termination are merely pretext for unlawful discrimination on the basis of his race. *Cf.* Amended Complaint, paragraphs 13 through

24; 25 through 64.

81. Defendant unlawfully terminated Plaintiff.

82. Defendant has engaged in a pattern and practice of racial discrimination in the terms and conditions of employment, including but not limited to retaining non-white employees who have engaged in similar or worse conduct to Plaintiff's. *Cf.* Amended Complaint, paragraphs 13 through 24; 25 through 64.

83. Defendant is liable for the acts and omissions of its agents and employees.

84. Defendant either directly or by and through agents, discriminated against Plaintiff on the basis of his race and caused him severe injuries, damages, and losses. *Cf.* Amended Complaint, paragraphs 65 through 72.

85. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

86. Defendant's discriminatory conduct was willful and in knowing or reckless disregard of the requirements of the Civil Rights Act.

87. As a consequence of Defendant's violation of the Civil Rights Act, Plaintiff has sustained significant economic and consequential damages.

### SECOND CAUSE OF ACTION
### SEX DISCRIMINATION
### (Violation of Civil Rights Act, Title VII, 42 U.S.C. § 2000e, *et seq.*)

88. Plaintiff hereby incorporates by reference paragraphs 13 through 19, and 22 through 72, of this Complaint as if fully set forth herein.

89. Plaintiff is male.

90. Plaintiff was a protected person under the Civil Rights Act at all relevant times.

91. Defendant treated Plaintiff less favorably than his similarly situated female

counterparts in the terms and conditions of their employment.

92. At all relevant times, Plaintiff performed the functions of his job competently and was qualified for his position.

93. Defendant has openly declared its discriminatory intent against men. *Cf.* Amended Complaint, paragraphs 13 through 19; 22 through 24.

94. Defendant terminated Plaintiff's employment because of his sex. Sex was a motivating factor in Defendant's decision to terminate Plaintiff. *Cf.* Amended Complaint, paragraphs 13 through 19; 22 through 24; 25 through 64.

95. Defendant's articulated reasons for Plaintiff's termination are merely pretext for unlawful discrimination on the basis of his sex. *Cf.* Amended Complaint, paragraphs 13 through 19; 22 through 24; 25 through 64.

96. Defendant unlawfully terminated Plaintiff.

97. Defendant has engaged in a pattern and practice of sex discrimination in the terms and conditions of employment, including but not limited to retaining female employees who have engaged in similar or worse conduct to Plaintiff's.

98. Defendant is liable for the acts and omissions of its agents and employees.

99. Defendant either directly or by and through agents, discriminated against Plaintiff on the basis of his sex and caused him severe injuries, damages, and losses.

100. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses. *Cf.* Amended Complaint, paragraphs 65 through 72.

101. Defendant's discriminatory conduct was willful and in knowing or reckless disregard of the requirements of the Civil Rights Act.

102. As a consequence of Defendant's violation of the Civil Rights Act, Plaintiff has

sustained significant economic and consequential damages.

## THIRD CAUSE OF ACTION
## AGE DISCRIMINATION
### (Violation of Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621, et seq.)

103. Plaintiff hereby incorporates by reference paragraphs 25 through 72 of this Complaint as if fully set forth herein.

104. Plaintiff was born May 14, 1967.

105. In the period of July 2020 to March 2021, Plaintiff was fifty-three (53) years of age.

106. Being over forty (40) years of age, Plaintiff was a protected person under the ADEA at all relevant times.

107. Defendant treated Plaintiff less favorably than his similarly situated younger counterparts in the terms and conditions of their employment.

108. At all relevant times, Plaintiff performed the functions of his job competently and was qualified for his position.

109. Defendant terminated Plaintiff's employment because of his age. Age was a motivating factor in Defendant's decision to terminate Plaintiff.

110. Defendant's articulated reasons for Plaintiff's termination are merely pretext for unlawful discrimination on the basis of his age.

111. Defendant unlawfully terminated Plaintiff.

112. Defendant has engaged in a pattern and practice of age discrimination in the terms and conditions of employment, including but not limited to retaining younger employees who have engaged in similar or worse conduct to Plaintiff's.

113. Defendant is liable for the acts and omissions of its agents and employees.

114. Defendant either directly or by and through agents, discriminated against Plaintiff on

the basis of his age and caused him severe injuries, damages, and losses. *Cf.* Amended Complaint, paragraphs 65 through 72.

115. Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

116. Defendant's discriminatory conduct was willful and in knowing or reckless disregard of the requirements of the ADEA.

117. As a consequence of Defendant's violation of the ADEA, Plaintiff has sustained significant economic and consequential damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and award him all relief as allowed by law, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Liquidated damages for all claims allowed by law;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs; and

h. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 8th day of September 2022.

                                                      Respectfully submitted,

                                                      /s/ Augustus Invictus
                                                      **Augustus Invictus, Esq.**
                                                      Florida Bar No.: 98586
                                                      THE INVICTUS LAW FIRM, P.A.
                                                      424 E. Central Blvd. #731
                                                      Orlando, Florida 32801
                                                      Phone: 407.900.2848
                                                      Email: InvictusPA@protonmail.com
                                                      ATTORNEY FOR PLAINTIFF