**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MATTHEW DORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 6:22-cv-01496-WWB-DCI |
| ) | |
| UNITED AIRLINES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT (Doc. 7), WITH PREJUDICE, AND INCORPORATED**
**MEMORANDUM OF LAW**

Defendant, UNITED AIRLINES, INC. ("United Airlines" or "Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves the Court to dismiss Plaintiff, Matthew Dory's ("Plaintiff"), Amended Complaint (Doc. 7) with prejudice because his claims are time-barred as he failed to exhaust his administrative remedies. Defendant also seeks its fees and costs incurred in bringing this Motion based on Plaintiff asserting procedurally and substantively deficient claims, which needlessly required Defendant to spend the time and fees to brief what the Equal Employment Opportunity Commission ("EEOC") already told Plaintiff- his claims are barred as he failed to timely file his Charge.

I.    **Introduction**

Plaintiff, who is represented by counsel, failed to timely file his Charge of Discrimination, which is a condition precedent required for him to maintain his claims. Plaintiff admits that on September 10, 2020, "United Airlines, issued his letter

terminating Mr. Dory's employment." Doc. 7 ¶¶ 42-43. Plaintiff's Charge, however, was not filed until October 2, 2021, ***over a year after his termination***.[1] Ex. A pp. 10-15. Plaintiff attempted to argue to the EEOC that his grievance filed through the Union on March 30, 2021, as to his termination, was the date from which the deadline to file his Charge should run. *Id.* The caselaw is clear, however, that a grievance does not toll the limitations period. In fact, Plaintiff admits, through attaching the EEOC's dismissal to his Complaint, that the EEOC dismissed Plaintiff's Charge "because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge." Doc. 7-1 at 2-3. Nevertheless, Plaintiff proceeded with filing his time barred claims with this Court.

Now, for the first time, Plaintiff claims in a footnote buried within his Amended Complaint that he filed a prior Charge of Discrimination with the EEOC on September 1, 2021. Doc. 7 ¶ 9 n. 1.  While Plaintiff attaches his October 2, 2021 Charge to the Complaint, despite knowing that United Airlines takes the position that his claims are time barred, curiously Plaintiff does not attach the purported September 1, 2021 Charge. Doc. 7-1. To ensure that United Airlines did not unknowingly overlook a prior Charge, the undersigned sent the EEOC a FOIA request for all Charges filed by Plaintiff against Defendant and noted we were aware of Charges from September 2021 and October 2021. In response, the EEOC indicated it only had information on Plaintiff's October 2021 Charge. Nowhere in the response to the FOIA request was there a mention of Plaintiff's alleged September 2021 Charge, not even in Plaintiff's rebuttal to

---

[1] The EEOC's administrative file, provided to Defendant in response to its Freedom of Information Act ("FOIA") request is attached as **Exhibit A** and citations to the file refer to the page number of the 51 page pdf.

Defendant's position statement, which clearly stated his claim was time barred. Ex. A pp. 33-36.  In an abundance of caution, United Airline's counsel requested a copy of the September 2021 Charge from Plaintiff's counsel.  In lieu of providing a charge, Plaintiff's counsel provided a letter that he purportedly faxed the EEOC dated September 1, 2021, despite the letter having no fax information on it or otherwise indicating that it was sent to the EEOC.  Even assuming that this letter is construed as being a proper charge, it was not filed within 300 days of Plaintiff's termination as he alleges. There are 356 days between Plaintiff's termination on September 10, 2020 and the alleged filing of the September 1, 2021 letter to the EEOC.  Moreover, setting aside whether Plaintiff and his counsel have lied to this Court, it is indisputable that Plaintiff's claims are barred for failing to exhaust his administrative remedies by failing to timely file his Charge.

## II.   **Background**

Plaintiff was an airline technician for United Airlines. Doc. 7 ¶ 68.  On July 11, 2020, Plaintiff admits that he sent text messages to his friends that involved racial slurs regarding his Black co-worker Tim Jackson and Mr. Jackson's wife. *Id.* ¶¶ 30 & 63. Specifically, the racial slurs included some of the following statements:

- "Niggers FUCK shit UP…They always have and they always will…"
- "And that FUCKIN NIGGER JACKSON is FUCKING MY LIFE UP!!! My GRANDFATHER was absolutely right…."
- "Niggers FUCK UP PEOPLE'S LIVES… That is what they do…"
- "I tried to wake up with a good attitude by that stupid fucking NIGGER RACIST TIMMY is still on my mind"
- "I wish nothing but HELL for those FUCKING FAGGOT pieces of shit."

Ex. A p. 48.

Mr. Jackson learned about the text messages and notified United Airlines management about them.  Doc. 7 ¶¶ 31 & 37.  United Airlines management conducted

a prompt and thorough investigation into the matter. *Id.* ¶¶ 39-41.   Based on the investigation's findings, on September 10, 2020, United Airlines terminated Plaintiff's employment for "[1] harassing and [2] discriminatory text messages about another employee and his wife [3] in a group chat with other co-workers[.]" *Id.* ¶¶ 42–43. Plaintiff admits that he sent the text messages involving racial slurs as to a coworker but contends that because the communications were outside of work, on his days off and private text messages that were not sent directly to his coworker, they are not "harassing." *Id.* ¶¶30 & 43.

On September 16, 2020, Plaintiff alleges that he filed a grievance via the Union.   *Id.* ¶ 44. On February 24, 2021, Plaintiff claims the grievance was heard by a four-member panel of non-United Airlines employees.  *Id.* ¶ 46. Plaintiff admits the grievance was denied on March 29, 2021. *Id.* ¶ 47.  On March 30, 2021, Plaintiff alleges that the Union informed him that it would not seek an arbitration under the collective bargaining agreement.  *Id.* ¶ 48.

***Over a year after his termination***, on October 2, 2021, Plaintiff filed a Charge of Discrimination with the EEOC, alleging race, sex, and age discrimination.  *Id.* Ex. A at 1. On May 25, 2022, the EEOC issued a Dismissal, stating that it was dismissing the Charge because it "was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file his charge."  *Id.* Ex. A at 2-3.

On August 23, 2022, Plaintiff filed his initial Complaint with this Court. Doc. 1. On September 1, 2022, this Court *sua sponte* dismissed the Complaint as an impermissible shotgun pleading and permitted Plaintiff to file an amended Complaint.

4

Doc. 6.   On September 8, 2022, Plaintiff filed his three-count Amended Complaint alleging race and sex discrimination in violation of Title VII of the Civil Rights Act pf 1964 and 42 U.S.C. § 2000(e), *et seq*. ("Title VII"), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.   Doc. 7.

Defendant files this Motion to Dismiss Plaintiff's Amended Complaint (Doc. 7) in its entirety and with prejudice based on his failure to exhaust his administrative remedies and timely file his Charge of Discrimination. While Plaintiff attempts to cure his untimely filing by alleging that his grievance tolled the limitations, as explained in more detail below, that is not the law. Moreover, for the first time, Plaintiff claims he filed a prior "Charge" with the EEOC on September 1, 2021. Doc. 7 ¶ 9 n. 1. Interestingly, Plaintiff does not bring this to the EEOC's attention in his October 2, 2021 Charge and does not raise this in his rebuttal to Defendant's position statement, in which he tries to explain why his claims are timely. Ex. A pp. 33-36 and Doc. 7-1. Moreover, the EEOC has no record of this alleged Charge. Ex. A. Even assuming arguendo that Plaintiff faxed the September 1, 2021 letter to the EEOC, Plaintiff still failed to timely file as that date was more than 300 days from his termination. For these reasons, Plaintiff's Amended Complaint should be dismissed with prejudice and Defendant should be awarded its fees and costs in having to bring this Motion to Dismiss a claim the EEOC previously told Plaintiff was time barred.

## MEMORANDUM OF LAW

### I.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R.

Civ. P. 8(a). "Although Rule 8(a) does not require 'detailed factual allegations,' it does require 'more than labels and conclusions'; a 'formulaic recitation of the cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504*, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). Here, Plaintiff attaches his October 2, 2021 Charge of Discrimination and EEOC Dismissal to his Amended Complaint. Doc. 7-1. The Court can consider these exhibits in ruling on this Motion as they are a part of the Amended Complaint.

Generally, a district court "must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *See Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Rule 12(b), Federal Rules of Civil Procedure (Rule(s))). However, the Eleventh Circuit recognizes certain exceptions to this rule. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). As relevant

here, courts may consider properly judicially noticed documents in resolving a motion to dismiss. *See id.* (holding that the district court "properly took judicial notice" of documents which were "public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned'" (quoting Fed. R. Evid. 201(b)); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding.")).

On November 3, 2022, the undersigned submitted a FOIA request to the EEOC seeking documents related to any and all Charges filed by Plaintiff against United Airlines and specifically noted we were aware of Charges from September 2021 and October 2021. In response, the EEOC provided its file on all of Plaintiff's Charges against United Airlines. Ex. A.  Contrary to Plaintiff's unsupported conclusory allegation in footnote 1 of the Amended Complaint, the EEOC has no record of any September 2021 Charge. *Id.* Rather, the file only contains Plaintiff's October 2, 2021 Charge of Discrimination and mentions no other Charge. *Id.*

This Court can and should take judicial notice of the EEOC's file provided in response to Defendant's FOIA request as it is a public record and its authenticity cannot reasonably be contested. Ex. A**.** In fact, the EEOC file contains the October 2, 2021 Charge of Discrimination and EEOC Dismissal attached to Plaintiff's Amended Complaint.  Ex. A. It is proper and routine for this Court to take judicial notice of the EEOC file at the Motion to Dismiss stage.  *Hewerdine v. Eli Lilly & Co.*, No. 3:20-cv-659-MMH-JRK, 2021 U.S. Dist. LEXIS 34199, at *11 (M.D. Fla. Feb. 2, 2021) (finding Court may take judicial notice of charges of discrimination without converting a motion to

dismiss into one for summary judgment); *Dickens v. Pepperidge Farm, Inc.*, 2020 U.S. Dist. LEXIS 130310, at *3 (M.D. Fla. July 23, 2020) ("[F]ederal courts regularly take judicial notice of government documents, such as EEOC filings, at the motion to dismiss stage."); *Smith v. City of Atl. Beach*, No. 3:18-cv-1459-J-34MCR, 2020 U.S. Dist. LEXIS 24381, at *3-4 (M.D. Fla. Feb. 12, 2020) ("Because the EEOC Charges and Right-to-Sue Notice are part of the EEOC's administrative record and not subject to reasonable dispute, the Court will take judicial notice of these documents."); *Hodge v. Miami Herald Co.*, 2008 U.S. Dist. LEXIS 70529, 2008 WL 4180012, *2 (S.D. Fla. Sept.10, 2008) (taking judicial notice of EEOC right-to-sue letter because plaintiff's EEOC actions were a matter of public record, and because plaintiff did not dispute its authenticity).

If Courts were not permitted to take judicial notice of the EEOC's administrative record to compare it to Plaintiff's conclusory allegations at this stage of litigation, then it would force employers to engage in timely and costly litigation through to summary judgment on claims that are otherwise time barred and should not have been permitted to be filed or pursued in the first place. This is an absurd result and exactly why Courts routinely take judicial notice and engage in the exact analysis outlined in this Motion.

## II.    <u>Plaintiff's Claims are Time-Barred.</u>

Plaintiff's claims are time-barred and must be dismissed with prejudice. Plaintiff brings Title VII and ADEA claims.  Before filing suit in federal court under Title VII or the ADEA, plaintiffs must first exhaust their administrative remedies by **timely** filing a charge of discrimination with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).  In

Florida, a plaintiff must file an administrative charge of discrimination with the EEOC within 300 days of the last discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) ("For a charge to be timely in Florida, a deferral state, it must be filed not more than 300 days after the alleged unlawful employment practice occurred."). Failure to file a timely charge with the EEOC generally results in a bar of the claims contained in the untimely charge. *Reed v. Winn Dixie, Inc.*, 677 F. App'x 607, 610 (11th Cir. 2017) (citing *Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). The timely filing of an EEOC charge is considered a condition precedent for bringing a civil action alleging employment discrimination. *Id.*

Here, Plaintiff alleges that he timely filed a Charge of Discrimination and all administrative prerequisites have been met and exhausted.  Doc. 7 ¶ 9.  The Court, however, is not required to take these conclusory allegations as true. Plaintiff's own Amended Complaint indicates that United Airlines terminated Plaintiff's employment on September 10, 2020. Doc.¶ 42. Further, the only Charge attached to the Amended Complaint in support of Plaintiff's claim that he satisfied his condition precedents demonstrates that Plaintiff did not file the Charge until October 2, 2021, **over a year** after his termination.  Doc. 7-1.   As such, Plaintiff's claims are time barred.

In an attempt to "cure" his untimely filing of the Charge, Plaintiff makes two arguments: (1) that he filed a prior Charge; and (2) the grievance he filed through the Union essentially tolled the time to file his Charge. Both of these arguments fail. First, there is absolutely no record of any purported September 2021 Charge. Plaintiff does not attach it to the Amended Complaint. Doc. 7. Plaintiff did not refer to it in his October

2021 Charge. Doc. 7-1. Plaintiff did not refer to it in his rebuttal to Defendant's position statement, explaining why his claims are timely. Ex. A pp. 33-36. And, most telling, the EEOC has no record of any September Charge. Ex. A.

As part of the good faith conferral between the undersigned counsel and Plaintiff's counsel, Plaintiff's counsel provided a September 1, 2021 letter that was allegedly faxed to the EEOC. There was no corresponding charge paperwork with the letter. Further, there was no evidence that the letter was actually faxed or otherwise sent to the EEOC. Even if this phantom September Charge exists, ***it still untimely*** as it was filed more than 300 days following his termination. Plaintiff was terminated on September 10, 2020. Doc. 7 ¶¶ 42-43. Plaintiff alleges that he faxed the mystifying September letter on September 1, 2021, which is 356 days after his separation. As a result, Plaintiff's claims are still untimely.

Second, the Charge states that the latest date the alleged discrimination took place was March 30, 2021.  Doc. 7-1.  Plaintiff admits, however, that the only incident occurring on March 31, 2022, was the Union declining to arbitrate the termination of Plaintiff's employment.  Doc. 7 ¶ 48. Plaintiff's allegations based on the Union's action or inaction are illogical on their face as they cannot be attributed to United Airlines. Plaintiff fails to provide any allegations demonstrating that United Airlines is responsible for the Union's actions. Moreover, as the United States Supreme Court has explained, termination is a discrete act that "occurs" for purposes of Title VII on the day that it happens—not after the conclusion of a grievance procedure. *AMTRAK v. Morgan*, 536 U.S. 101, 111 (2002); *see also Jackson v. Escambia County School District*, No. 3:15cv360/MCR/EMT, 2016 U.S. Dist. LEXIS  134533 (N.D. Fla.

Aug. 30, 2016) (noting that "the limitations period is not tolled during the pendency of a grievance or arbitration procedure or other such review of the employment action").

The Court need not turn this Motion to Dismiss into a Motion for Summary Judgment as Plaintiff's own exhibits to the Second Amended Complaint, in addition to the EEOC's administrative file, contradict Plaintiff's conclusory claim that he timely filed his Charge. The record demonstrates that Plaintiff's claims are time barred and Plaintiff's Amended Complaint should be dismissed with prejudice. Further, Defendant respectfully requests that this Court award Defendant its reasonable attorneys' fees and costs in bringing this Motion.

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter an order (i) GRANTING this motion, (ii) dismissing Plaintiff's Amended Complaint with prejudice; (iii) awarding Defendant its attorneys' fees and costs; and (iv) ORDERING such further relief as the court deems appropriate.

## **LOCAL RULE 3.01(g) CERTIFICATE**

On December 2, 2022, Counsel for Defendant conferred with counsel for Plaintiff regarding this Motion.  Plaintiff objected to the relief requested.

DATED this 7th day of December, 2022.

|  | Respectfully submitted, |
|---|---|
|  | JACKSON LEWIS P.C.<br>390 North Orange Avenue, Suite 1285<br>Orlando, Florida 32801<br>Telephone:   (407) 246-8440<br>Facsimile:     (407) 246-8441 |
|  | By:    */s/ Vaughn G.S. Glinton, Jr.*<br>Amanda A. Simpson<br>Florida Bar No. 0072817<br>amanda.simpson@jacksonlewis.com<br><br>Vaughn G. S. Glinton, Jr.<br>Florida Bar No. 1002778<br>vaughn.glinton@jacksonlewis.com |
|  | Attorneys for Defendant |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of December, 2022, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:  Augustus Invictus, Esquire, The Invictus Law Firm, P.A., 442 E. Central Blvd., Suite 731, Orlando, FL 32801

*/s/ Vaughn G.S. Glinton, Jr.*
Attorney

*Matthew Dory v. United Airlines, Inc.*
*Case No. 6:22-cv-01496*

# EXHIBIT "A"



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Miami District Office**

100 SE 2nd Street, Suite 1500
Miami, FL 33131
Free: (833) 827-2920
TTY: (800) 669-6820
FAX: (305) 808-1742
Website: www.eeoc.gov

11/15/2022

VIA: kelly.wright@jacksonlewis.com
Kelly  Wright
Jackson Lewis, P.C.
390 N. Orange Avenue
Suite 1285
Orlando, FL 32801

Re: FOIA No.: 510-2023-001432
Matthew Dory v United Airlines 510-2022-00380

Dear Mrs. Wright:

Your Freedom of Information Act (FOIA) request, received on 11/03/2022, is processed. Our search began on 11/15/2022. All agency records in creation as of 11/15/2022 are within the scope of EEOC's search for responsive records. The paragraph(s) checked below apply.

Your request is granted in part and denied in part. Portions not released are withheld pursuant to the subsections of the FOIA indicated at the end of this letter. An attachment to this letter explains the use of these exemptions in more detail.

The disclosed records are enclosed. Photocopying and search fees have been waived pursuant to 29 C.F.R. § 1610.14.

I trust that the furnished information fully satisfies your request. If you need any further assistance or would like to discuss any aspect of your request, please do not hesitate to contact the FOIA Professional who processed your request or our FOIA Public Liaison (see contact information in above letterhead or under signature line).

You may contact the EEOC FOIA Public Liaison Michael L. Heise for further assistance or to discuss any aspect of your request. In addition, you may contact the Office of Government Information Services (OGIS) to inquire about the FOIA mediation services they offer.

The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, email at ogis@nara.gov; telephone at (202) 741-5770; toll free 1-877-684-6448; or facsimile at (202) 741-5769.

The contact information for the FOIA Public Liaison is as follows: Michael L. Heise, EEOC FOIA Public Liaison, Office of Legal Counsel, FOIA Division, Equal Employment Opportunity Commission, 131 M. Street, N.E., Fifth Floor, Washington, D.C. 20507, email to FOIA@eeoc.gov, telephone at (202) 921-2542; or fax at (202) 653-6034.

If you are not satisfied with the response to this request, you may administratively appeal in writing. Your appeal must be postmarked or electronically transmitted in 90 days from receipt of this letter to the Office of Legal Counsel, FOIA Division, Equal Employment Opportunity Commission, 131 M Street, NE, 5NW02E, Washington, D.C. 20507, email to FOIA@eeoc.gov; online at https://eeoc.arkcase.com/foia/portal/login, or fax at (202) 653-6034. Your appeal will be governed by 29 C.F.R. § 1610.11.

510-2023-001432

See the attached Comments for further information.

Sincerely,

Evangeline Hawthorne
District Director


**Fredricka B. Warren**
**Government Information Specialist**
**miamfoia@eeoc.gov**
https://eeoc.arkcase.com/foia/portal/login

Applicable Sections of the Freedom of Information Act, 5 U.S.C. § 552(b):

**Exemption(s) Used:**

[ ]  (b)(3)(A)(i)                          [ ]  (b)(6)
     [ ]  § 706(b)                    [ ]  (b)(7)(A)
     [ ]  § 709(e)                    [ ]  (b)(7)(C)
     [ ]  § 107 of the ADA            [ ]  (b)(7)(D)
     [ ]  § 207 of the GINA           [ ]  (b)(7)(E)
[ ]  (b)(4)                               [ ]  (b)(7)(F)
[ ]  (b)(5)


**(b)(5)**

Exemption (b)(5) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (2016), as amended by the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, permits withholding documents that reflect the analyses and recommendations of EEOC personnel generated for the purpose of advising the agency of possible action. This exemption protects the agency's deliberative process and allows nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption covers internal communications that are deliberative in nature. National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132 (1975); Hinckley v. United States, 140 F.3d 277 (D.C. Cir. 1998); Mace v. EEOC, 37 F. Supp. 2d 1144 (E.D. Mo. 1999). The purpose of the deliberative process privilege is to "allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Missouri ex. rel. Shorr v. United States Corps of Eng'rs., 147 F.3d 708, 710 (8th Cir. 1998). Disclosure of preliminary assessments and opinions would create a chilling effect on the Commission staff's ability to freely and openly deliberate and discuss ideas, strategies, and recommendations, thereby impairing the Commission's ability to effectively and efficiently enforce applicable federal EEO laws by investigating charges and complaints, litigating and adjudicating cases, promulgating regulatory and sub-regulatory guidance, conducting outreach and education activities, and other related activities. Records may be withheld under this exemption if they were prepared prior to an agency's decision, Wolfe v. Dep't of Health and Human Services, 839 F.2d 768, 775, 776 (D.C. Cir. 1988)

510-2023-001432

(en banc) and for the purpose of assisting the agency decision maker.  First Eastern Corp. v. Mainwaring, 21 F.3d 465,468 (D.C. Cir. 1994).  See also, Greyson v. McKenna & Cuneo and EEOC, 879 F. Supp. 1065, 1068, 1069 (D. Colo. 1995).  Records may also be withheld to the extent they reflect "selective facts" compiled by the agency to assist in the decision-making process.  A. Michael's Piano, Inc. v. Federal Trade Commission, 18 F.3d 138 (2d Cir. 1994).  An agency may also withhold records to the extent that they contain factual information already obtained by a requester through prior disclosure.  See Mapother, Nevas, et al. v. Dep't of Justice, 3 F.3d 1533 (D.C. Cir. 1993).  DOCUMENTS WITHHELD PURSUANT TO EXEMPTION (b)(5) TO THE FOIA:

--------------------------------------------------------------------------------------------------------------

| DOCUMENTS WITHHELD PURSUANT TO EXEMPTION  (b)(5) TO THE FOIA | |
| --- | --- |
| Page | Description |
| 5 | Exemption 552 (b) (5):  Intra-agency correspondence, redacted **Recommendation for Dismissal/Closure** containing the Investigator's pre-decisional thoughts (redact) |

**(b)(7)(C)**

Exemption (b)(7)(C) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7)(C) (2016), as amended by the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, authorizes the Commission to withhold:\n\nrecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .\n\nThe seventh exemption applies to civil and criminal investigations conducted by regulatory agencies.  Abraham & Rose, P.L.C. v. United States, 138 F.3d 1075, 1083 (6th Cir. 1998). Release of statements and identities of witnesses and subjects of an investigation creates the potential for witness intimidation that could deter their cooperation. National Labor Relations Board v. Robbins Tire and Rubber Co., 437 U.S. 214, 239 (1978); Manna v. United States Dep't. of Justice, 51 F.3d 1158,1164 (3d Cir. 1995). Disclosure of identities of employee-witnesses could cause "problems at their jobs and with their livelihoods."  L&C Marine Transport, Ltd. v. United States, 740 F.2d 919, 923 (11th Cir. 1984).\n\nThe Supreme Court has explained that only "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA, and noted that "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal little or nothing about an agency's own conduct."  United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).\n\nFor the purposes of determining what constitutes an unwarranted invasion of personal privacy under exemption (b)(7)(C), the term "personal privacy" only encompasses individuals, and does not extend to the privacy interests of corporations. FCC v. AT&T Inc., 131 S.Ct. 1177, 1178 (2011).

--------------------------------------------------------------------------------------------------------------

| DOCUMENTS WITHHELD PURSUANT TO EXEMPTION (b)(7)(C): | |
| --- | --- |
| Page | Description |
| 6-7, 20 | EXEMPTION 552 (B) (7) (C):  **Charging Party** information redacted |

510-2023-001432

For a full description of the exemption codes used please find them at the following URL:
https://www.eeoc.gov/foia/freedom-information-act-reference-guide

This response was prepared by Fredricka Warren, Government Information Specialist, who may be reached at miamfoia@eeoc.gov.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 05/25/2022

**To:** Mr. Matthew Dory
　　　1753 Stafford Drive
　　　Belle Isle, FL 32809
Charge No: 510-2022-00380

EEOC Representative and email:　　Luis Olivares
　　　　　　　　　　　　　　　　Federal Investigator
　　　　　　　　　　　　　　　　luis.olivares@eeoc.gov

_____

### DISMISSAL OF CHARGE

The EEOC is closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 510-2022-00380.

On behalf of the Commission,

Digitally Signed By:Roberto Chavez
05/25/2022
_____
Roberto Chavez
Acting Director

**Cc:**
Megan Detzner
UNITED AIRLES, INC
Megan.Detzner@united.com

Augustus Invictus
THE INVICTUS LAW FIRM, P.A.
InvictusPA@protonmail.com


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS — 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 510-2022-00380 to the District Director at Roberto Chavez, 100 SE 2nd St Suite 1500

Miami, FL 33131.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

EEOC Form 291 (11/09)

# MEMORANDUM

## RECOMMENDATION FOR CLOSURE

TO:        Christopher Bashaw, Enforcement        CHARGE NO    510-2022-00380
           Supervisor

FROM:    Luis Olivares, Investigator

SUBJECT:  Matthew Dory                                      United Airlines
          *Charging Party*              *v.*              *Respondent*


I recommend dismissal/closure of the subject charge based on the following:

   


Specific information in support of recommendation/decision:

CP alleges to have been discriminated against because of her race, white, sex male, and age 54. CP had an altercation after working hours with colleague, in which CP called colleague Nigger, good for nothing, called Asians cat eating cunt etc. as it is his constitutional right. CP was subsequently terminated, R violated his American right.
PS states that the case is untimely as CP was terminated Sep 10, 2020, and the charge was filed Oct 2, 2021. R had the right to terminated CP as he was aggressive and harassed his colleagues.
Rebuttal states that R is trying to discriminate against white males overall.



EEOC Form 5 (11/09)

| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br><br>510-2022-00380 |
|---|---|---|

| Florida Commission on Human Relations | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Matthew Dory | (407) 375-5187 | (b) (7)(C) 1967 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1753 Stafford Drive, Belle Isle, Florida 32809 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two are named, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| United Airlines | 300+ | (800) 241-6522 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 06649, Chicago, Illinois 60606 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| See Particulars below. | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 07/08/2020    Latest 03/30/2021

☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

See attached document.

**EEOC MIAMI DISTRICT OFFICE**
**RECEIVED 10/02/2021**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>10-2-2021<br>Date     Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>10.2.21<br><br>LISA M WHITLOCK<br>Notary Public - State of Florida<br>Commission # HH 050549<br>My Comm. Expires Oct 5, 2024<br>Bonded through National Notary Assn. |

## STATEMENT OF PARTICULARS

Mr. Matthew Dory is a white male, born (b) (7)(C), 1967 (age 54).

The discrimination and unlawful termination complained of herein occurred at United Airlines at the Orlando International Airport, One Jeff Fuqua Boulevard, Orlando, Florida 32827.

The address of United Airlines' corporate office is P.O. Box 06649, Chicago, Illinois 60606.

The address of the Teamsters Local 769 is 8000 S. Orange Ave., Unit 107, Orlando, Florida 32809.

The date of the last job action was 30 March 2021.

The following persons discriminated against Mr. Dory:

Scott Kirby, CEO
Jessica Kimbrough, Chief Diversity, Equity and Inclusion Officer
John Wertz, Director, MCO Technical Operations
Bob Fisher, IBT International Representative
Chris Carrick, Managing Director, SFO
Paul Alves, International Representative
Mark McLean, Manager, Labor Relations
Molly Driscoll, Corporate Security
Mike Blomquist, Chief Union Shop Steward
Timothy Jackson, Technician
Franklin "Angry Frank" Harris, Technician
Juan Esquivel, Technician

Mr. Dory was hired by Continental Airlines on August 6, 1987 and became an employee of United Airlines in 2012 when the two companies merged. At the time of Mr. Dory's termination, he was stationed at the Orlando International Airport (MCO) in Orlando, Florida.

Our client was discriminated against by United Airlines and its employees on the basis of his race, sex, and age for being a white male over forty (40) in a company implementing policies overtly contrary to the job security of older white males. Not only has United Airlines been vocally supportive of Black Lives Matter, a terrorist group overtly hostile to white Americans, but the company has gone so far as to create entire programs devoted to discriminating against white males.

For instance, in the most infamous case, United Airlines has purchased a flight school and developed a pilot training program – but has publicly boasted that its criteria is primarily based on minority status, not merit. The goal of this program, United Aviate Academy,[1] is not to recruit the most qualified candidates as future United Airlines pilots. Rather, United Airlines "[plans] for 50% of the 5,000 pilots [they] train in the next decade to be women or people of color."[2] In the current year, 2021, only 7% of United Airlines' pilots are women, and only 13% are non-white. In order to push white males down to a mere 50% of pilots, United Airlines must enact severe policies of discrimination based on race and sex.

---

[1] United Aviate Academy, https://unitedaviate.com/aviate-program-career-paths/united-aviate-academy/ (last accessed Aug. 13, 2021).
[2] United Airlines (@united), Twitter (Apr. 6, 2021, 9:30 AM), https://twitter.com/united/status/1379426304857141250

When publicly criticized for this policy, the response of United Airlines was: "All the highly qualified candidates we accept into the Academy, regardless of race or sex, will have met or exceeded the standards we set for admittance."[3] In other words, United Airlines has set minimum standards for applicants instead of seeking the most qualified applicants, turning the process of becoming a pilot on its head in the pursuit of racial "equity," the term "equality" having been abandoned.

Mr. Dory is not a pilot. But he was, for thirty-three (33) years, an employee of United Airlines,[4] which has actively sought to recruit from within its own ranks for United Aviate Academy. Because of the propaganda, or marketing, disseminated from United Airline's corporate offices in Chicago, Illinois, both within the company and to the outside world, the message to United Airlines employees was clear: Do not bother to apply for the pilot training program if you are a white male.

This policy for United Aviate Academy was announced on April 6th of this year. Mr. Dory's last job action was March 30th, a week earlier. The program of United Airlines to replace white male pilots with minorities and women over the next ten years cannot be separated from the discrimination against Mr. Dory. United Airlines has become a primary example of the systemic racism it publicly claims to abhor.

Whether CEO Scott Kirby was aware of Mr. Dory's particular case or not is irrelevant: he created the conditions at United Airlines for this discrimination. Since Mr. Dory's termination, Mr. Kirby has pushed the racially discriminatory policies of United Airlines full throttle. On April 6th of this year, Mr. Kirby posted to his personal LinkedIn profile the discriminatory policies of the pilot training program.[5] Later that month, Ms. Jessica Kimbrough, Chief Diversity, Equity[6] and Inclusion Officer for United Airlines, touted the company's efforts "to create real, impactful, sustainable change within the company" in an interview with Essence, a magazine for black Americans.[7] On June 19th, United Airlines flew an all-black crew in honor of Juneteenth, on which day United also launched BEACON, the airline's Black Business Resource Group.[8] The pattern of conduct by United Airlines and its leading lights is clearly, overtly, and unapologetically discriminatory against white males.

It is for this reason that Mr. Dory was told by Tommy Esposito, Local Business Agent for Teamster 769, that United Airlines was going to make an example out of Mr. Dory. John Wertz, Director of Technical Operations at MCO, stated in his termination letter of September 10, 2020 that our client was fired for "[1] harassing and [2] discriminatory text messages about another employee and his wife [3] in a group chat with other co-workers[.]" First and foremost, all of the communications for which Mr. Dory earned the ire of United Airlines were communications outside of work. The text messages were delivered on Mr. Dory's days off, and Mr. Dory was

---

[3] United Airlines (@united), Twitter (Apr. 6, 2021, 9:49 AM), https://twitter.com/united/status/1379431009398054917

[4] And Continental Airlines before the 2012 merger.

[5] Scott Kirby (https://www.linkedin.com/in/jscott-kirby/), LinkedIn (Apr. 6, 2021), https://www.linkedin.com/posts/jscott-kirby_its-important-that-corporations-dont-just-activity-6785193389928386560-sczU

[6] NB: "equity," not "equality."

[7] Kimberly Wilson, *United Airlines New Diversity Officer Unveils Roadmap for Racial Equality*, Essence (Apr. 26, 2021), https://www.essence.com/lifestyle/travel/united-airlines-new-unveils-roadmap-for-racial-equality/.

[8] *United Airlines Flies from Houston to Chicago with Special All-Black Crew in Honor of Juneteenth*, CBS Chicago (June 20, 2021), https://www.msn.com/en-us/travel/news/united-airlines-plane-flies-from-houston-to-chicago-with-special-all-black-crew-in-honor-of-juneteenth/ar-AALehNR.

nowhere near the airport. Second, these messages could not possibly be considered "harassing," as Mr. Dory never sent any text messages to the employee in question or to his wife. Third, no group chat amongst employees ever existed: these were private text messages sent from one person to another. It is clear that the true cause of concern for United Airlines is the colorful language used by Mr. Dory.

The facts concerning Mr. Dory's termination, all corporate lingo and propaganda aside, are as follow:

On July 8, 2020, Tim Jackson, one of Mr. Dory's co-workers, started harassing Mr. Dory about his pet dog. This included sending Mr. Dory a picture via text of a dog of the same breed roasting over a fire.

On July 9th, Mr. Dory's wife saw the text message and picture. This caused a great deal of discord in the home.

On July 11th, Mr. Dory, on his days off and nowhere near the workplace, wrote private text messages to his friends about Tim Jackson, who had sent the offending text message and picture. Mr. Dory's text messages contain colorful language about Tim Jackson and his wife, including racial slurs.

On July 12th, Tim Jackson was contacted about these text messages by someone who was not Mr. Dory.

From July 14th to July 30th, Mr. Dory worked in a hostile work environment instigated by Franklin Harris, engendered by Tim Jackson, Juan Esquivel, and others, and tolerated, if not encouraged, by management.

Between July 12th and July 14th, Franklin "Angry Frank" Harris printed the private text messages of Mr. Dory to make pamphlets of them and began distributing them to everyone at work. "Angry Frank," a black male who has been called by his co-workers "The Racist Black Avenger who will overturn every stone in search of racism," deliberately publicized and distributed Mr. Dory's private communications in an effort to create and engender an environment of hostility at United Airlines, especially against Mr. Dory. It was the campaign of "Angry Frank" against Mr. Dory that set in motion the events leading to Mr. Dory's termination from United Airlines.

On July 14th, Tim Jackson wrote a text message to Mr. Dory complaining of Mr. Dory's behavior.

On July 15th, Mr. Dory responded to this text message. According to his own statement, Mr. Jackson found the response unsatisfying and determined to confront Mr. Dory in person the following day.

On July 16th, Mr. Dory was cornered by co-workers Tim Jackson and Juan Esquivel, as Tim Jackson yelled at Mr. Dory in a hostile and aggressive manner. This abusive confrontation was overheard by co-workers several doors down. In this confrontation, Mr. Dory was made to fear for his physical safety. Mr. Dory and Mr. Jackson never spoke again after this.

On July 30th – two, full, uneventful weeks later – Tim Jackson made an unprovoked statement to United Airlines management, complaining of Mr. Dory's "American right" to make racial slurs when off the clock. Mr. Dory was called into the front office, where Shift Manager Carlos Durand confiscated his badge; which means that Mr. Dory was no longer allowed on the premises and was unable to work. No fact-finding investigation or hearing was ever conducted before taking this extraordinary action.

On August 18th, an investigatory meeting was held, and Molly Driscoll of Corporate Security questioned Mr. Dory.

On August 19th, Mr. Dory wrote to Molly Driscoll explaining facts he did not feel were fairly elicited in the investigatory meeting.

On September 2nd, a fact-finding investigation was conducted by United Airlines management.

On September 10th, John Wertz, Director of Technical Operations at MCO for United Airlines, issued his letter terminating Mr. Dory's employment.

On September 16th, Mr. Dory filed a grievance via the Union in accordance with the collective bargaining agreement. Both United Airlines and the Union failed to abide by the grievance and arbitration procedures as outlined in Articles 19 and 20 of the collective bargaining agreement.

Article 19 of the collective bargaining agreement lists the steps of a grievance procedure for an aggrieved employee such as Mr. Dory. Key to this process is the Chief Steward, who in Mr. Dory's case was Mike Blomquist. Employees at United Airlines were witness to Mike Blomquist trashing Mr. Dory for "racism" on the grounds that Mr. Blomquist had an Asian wife. The fact that Mr. Blomquist was denigrating Mr. Dory while being appointed as Mr. Dory's designated representative demonstrates how corrupted the grievance procedure was. It also indicates the level of resolve the Union had in defending Mr. Dory against his unlawful termination. Mr. Blomquist did not recuse himself as Mr. Dory's representative and did not seek to find a replacement. Rather, he "represented" Mr. Dory by throwing him under the bus, as evidenced in the outcome of the grievance proceedings and the denial of arbitration to Mr. Dory.

On February 24, 2021, the grievance was heard by a four-member panel that included Bob Fisher, IBT International Representative; Chris Carrick, Managing Director, SFO; Paul Alves, International Representative; and Mark McLean, Manager, Labor Relations.

On March 29th, the Board denied Mr. Dory's grievance.

On March 30th, the Union informed Mr. Dory that they would not be seeking arbitration under Article 20 of the collective bargaining agreement. The dubious, unconscionable grounds for the denial of arbitration were that Mr. Dory had not included a "confidentiality statement" in his private text messages. This reasoning, if accepted, would mean that the text messages of every American would be considered public unless followed by a confidentiality statement. This is, of course, insane – but this is the fraudulent justification for terminating Mr. Dory's employment based on private, off-the-clock, off-the-premises text messages with friends.

The denial of Mr. Dory's grievance, along with the denial of arbitration, evidences disparate treatment between Mr. Dory and others similarly situated. For instance, a co-worker named Edward Roger Greenwood, against whom Mr. Dory had filed numerous HR complaints for harassment, creation of a hostile work environment, and even literally sabotaging airplanes, was never held accountable for his actions over a span of fifteen (15) years. An illustrative incident is one in which Mr. Greenwood waited for Mr. Dory at the time clock in order to punch out right in front of him, give Mr. Dory the middle finger, and repeatedly scream, "F*** you!" in his face. When complained of to Shift Manager Carlos Durand, Mr. Durand said, "Sorry, [Mr. Greenwood] was off the clock." *Nota Bene*: Mr. Carlos Durand was the very same Shift Manager who pulled Mr. Dory's badge immediately upon complaint by Tim Jackson.

Likewise, multiple people who have gone through the grievance process after drinking on the job (outrageous conduct when working on airplanes), starting physical fights with co-workers, and other dangerous, on-the-clock behavior, have invariably been granted reinstatement or arbitration. That Mr. Dory should be "made an example of" and denied these same basic rights on account of being an older, white male is manifest discrimination. Mr. Dory was fired for using

4

racial slurs off the clock and off premises in private conversations after a picture of his dog roasting over a fire created marital problems in his home; and that picture was delivered by Mr. Jackson while he was on the clock and on the premises. No black man in America would be fired from any company on similar grounds; the termination of Mr. Dory by United Airlines is clearly in line with its company-wide, discriminatory policies against white males.

What is more, the disparate treatment of United Airlines toward black males and white males, even in the isolated incidents at issue in this complaint, is concrete. Mr. Dory was terminated for having sent offensive texts to other persons off-the-clock and off-the-premises, in response to actions initiated by Timothy Jackson himself, who was on-the-clock and on-the-premises when he engaged in the misconduct toward our client. Mr. Dory was terminated for creating a hostile work environment when in fact it was Franklin Harris who made pamphlets of the offending texts and distributed them at United Airlines with the specific intent of creating a hostile work environment; and Mr. Jackson who created a hostile work environment by physically intimidating Mr. Dory in person at work. Moreover, Mr. Dory's conduct was never directed toward Mr. Jackson; Mr. Jackson's hostile conduct was directed toward Mr. Dory, both in text and in person. The harassment at issue in this case was a one-way street, with Mr. Jackson harassing and intimidating Mr. Dory, never *vice versa*. Neither Mr. Jackson nor Mr. Harris were fired; only Mr. Dory was fired. Both Mr. Jackson and Mr. Harris are black males; Mr. Dory is a white male. The disparate treatment of these employees speaks volumes as to the discriminatory policies of United Airlines against white males.

Mr. Dory has suffered great injury due to the actions of United Airlines and its employees. First, the humiliation of being terminated, the severance of ties between friends and colleagues, the abrupt termination without cause from a job he worked for thirty-three (33) years, all comprise a traumatic injury, especially as these things would not have been suffered by a non-white person or a female.

Second, Mr. Dory was terminated without the benefits to which all employees similarly situated are entitled, including pass travel of any form.

Third, being an aircraft technician, Mr. Dory's employment opportunities are limited to working on aircraft at the airport. His special training, his age, and his physical abilities are all factors preventing him from obtaining new work at a comparable rate to what he was being paid at the time of his unlawful termination from United Airlines.

Fourth, Mr. Dory has been forced to spend time and attorney's fees in preparing for litigation against United Airlines, which would not have been necessary but for his unlawful termination by the company.

Mr. Dory seeks resolution in the form of reinstatement and back pay from the date of his termination, September 10, 2020 in the amount of $100,000.00.



**U.S. Equal Employment Opportunity Commission**
**Miami District Office**
Miami Tower, 100 S E 2nd Street
Suite 1500
Miami, FL 33131

## NOTICE OF CHARGE OF DISCRIMINATION

(This Notice replaces EEOC FORM 131)

### DIGITAL CHARGE SYSTEM

October 26, 2021

**To:** Megan Detzner
SR MGR-EEO
UNITED AIRLES, INC
Megan.Detzner@united.com

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Matthew Dory, under: Title VII of the Civil Rights Act (Title VII) and The Age Discrimination in Employment Act (ADEA). The circumstances of the alleged discrimination are based on Race, Age, and Sex, and involve issues of Harassment, Discipline, Intimidation, Discharge, and Terms/Conditions that are alleged to have occurred on or about Jul 08, 2020 through Mar 30, 2021.

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The charge is available for you to download from the EEOC Respondent Portal, EEOC's secure online system.

Please follow these instructions to view the charge within ten (10) days of receiving this Notice:

1. Access EEOC's secure online system: **https://nxg.eeoc.gov/rsp/login.jsf**
2. Enter this EEOC Charge No.: **510-2022-00380**
3. Enter this temporary password: **tw5934kx**

Once you log into the system, you can view and download the charge, and electronically submit documents to EEOC. The system will also advise you of possible actions or responses, and identify your EEOC point of contact for this charge.

If you are unable to log into the EEOC Respondent Portal or have any questions regarding the Digital Charge System, you can send an email to MiamiDigital@eeoc.gov.

**Preservation of Records Requirement**

EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation. 29 CFR §1602.14. For more information on your obligation to preserve records, see http://www.eeoc.gov/employers/recordkeeping.cfm.

**Non-Retaliation Requirements**

The laws enforced by the EEOC prohibit retaliation against any individual because s/he has filed a charge, testified, assisted or participated in an investigation, proceeding or hearing under these laws. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. For more information, see http://www.eeoc.gov/laws/types/facts-retal.cfm.

**Legal Representation**

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please provide the attorney's contact information when you log in to the online system.

Please retain this notice for your records.

# U.S. Equal Employment Opportunity Commission

## FEDERAL INVESTIGATION:
## REQUEST FOR POSITION STATEMENT
## AND SUPPORTING DOCUMENTARY EVIDENCE

EEOC hereby requests that your organization submit within 30 days a Position Statement setting forth all facts which pertain to the allegations in the charge of discrimination under investigation, as well as any other facts which you deem relevant for EEOC's consideration.

We recommend you review EEOC's resource guide on "Effective Position Statements" as you prepare your response to this request.

## Fact-Based Position Statement
This is your opportunity to raise any and all defenses, legal or factual, in response to each of the allegations of the charge. The position statement should set forth all of the facts relevant to respond to the allegations in the charge, as well as any other facts the Respondent deems pertinent to EEOC's consideration. The position statement should only refer to, but not identify, information that the Respondent asserts is sensitive medical information, or confidential commercial or financial information.

EEOC also requests that you submit all documentary evidence you believe is responsive to the allegations of the charge. If you submit only an advocacy statement, unsupported by documentary evidence, EEOC may conclude that Respondent has no evidence to support its defense to the allegations of the charge.

EEOC may release your position statement and non-confidential attachments to the Charging Party and her representative and allow them to respond to enable the EEOC to assess the credibility of the information provided by both parties. It is in the Respondent's interest to provide an effective position statement that focuses on the facts. EEOC will not release the Charging Party's response, if any, to the Respondent.

If no response is received to this request, EEOC may proceed directly to a determination on the merits of the charge based on the information at its disposal.

## Signed by an Authorized Representative
The Position Statement should be signed by an officer, agent, or representative of Respondent authorized to speak officially on its behalf in this federal investigation.

## Segregate Confidential Information into Separately Designated Attachments
If you rely on confidential medical or commercial information in the position statement, you should provide such information in separate attachments to the position statement labeled "Sensitive Medical Information," "Confidential

Commercial or Financial Information," or "Trade Secret Information" as applicable. Provide an explanation justifying the confidential nature of the information contained in the attachments. Medical information about the Charging Party is not sensitive or confidential medical information in relation to EEOC's investigation.

Segregate the following information into separate attachments and designate them as follows:

     a. Sensitive medical information (except for the Charging Party's medical information).
     b. Social Security Numbers
     c. Confidential commercial or financial information.
     d. Trade secrets information.
     e. Non-relevant personally identifiable information of witnesses, comparators or third parties, for example, social security numbers, dates of birth in non-age cases, home addresses, personal phone numbers and email addresses, etc.
     f. Any reference to charges filed against the Respondent by other charging parties.

**<u>Requests for an Extension</u>**
If Respondent believes it requires additional time to respond, it must, at the *earliest possible time* in advance of the due date, make a written request for extension, explain why an extension is necessary, and specify the amount of additional time needed to reply.  Submitting a written request for extension of time does not automatically extend the deadline for providing the position statement.

**<u>Upload the Position Statement and Attachments into the Respondent Portal</u>**
You can upload your position statement and attachments into the Respondent Portal using the **+ Upload Documents** button. Select the "Position Statement" Document Type and click the **Save Upload** button to send the Position Statement and attachments to EEOC. Once the Position Statement has been submitted, you will not be able to retract it via the Portal.

Dear Small Business Manager:

The Equal Employment Opportunity Commission (EEOC) is the federal agency with primary responsibility for enforcing our nation's equal employment opportunity (EEO) laws. The laws we enforce prohibit job discrimination based on race, color, religion, sex (including on the basis of pregnancy, gender identity, or sexual orientation), national origin, age, disability, retaliation and genetic information.

The attached Fact Sheet provides an overview of the EEOC's procedures from the time a charge of employment discrimination is filed to the point that it is resolved.

We encourage you to visit our online Small Business Resource Center, which provides a wealth of information designed to help small businesses. We offer tips and short videos on key employment topics including what to do when you receive a charge of discrimination.

In most cases, as our first step in processing a charge, we offer mediation as a neutral, voluntary and confidential way to achieve a mutually satisfactory resolution for all parties. Seventy-five percent of charges that are mediated are successfully resolved. In an independent study, 96% of employers who tried the EEOC's mediation program said they would use it again if the need arose.

In addition to the EEOC representative identified on the Notice of Charge of Discrimination, each of our district offices has a Small Business Liaison to provide technical assistance and help employers resolve questions about the laws we enforce, our mediation program, and the charge process. You can find the names and contact information of our Small Business Liaisons on our web site.

We encourage you to contact the Small Business Liaison in your area to answer any questions you may have and assure you that any inquiry or request for information will not adversely affect the investigation of the charge that has been filed.

Yours truly,

U.S. Equal Employment Opportunity Commission

### *Find the Answers at EEOC's Small Business Resource Center*

The EEOC's Small Business Resource Center (www.eeoc.gov/employers/smallbusiness) is filled with useful information for small business and can connect you with EEOC staff in your area who can help you.

- *Have a question? Need training for your staff or one-on-one assistance?*

  To request information about the EEOC, training on federal employment discrimination laws or an explanation of the charge process, contact your local EEOC Small Business Liaison. We are here to help.

- *Want quick information online?*

  The EEOC's Small Business Liaisons have created videos with the small business owner in mind and the simple straightforward information that you need most. For example, you may need to know what questions you shouldn't ask in a job interview, and other tips for the hiring process.

  Also see our Frequently Asked Questions.

- *Need an employment policy or practical tips on preventing job discrimination?*

  See 10 Quick Tips for Small Business.

- *Need to know more about EEOC's charge process?*

  We have a video on Responding to a Charge of Discrimination.

- *What is mediation?*

  The EEOC's mediation program offers a free, voluntary, confidential and informal resolution process for many charges of discrimination. Mediations are conducted by a neutral mediator. If mediation is successful, there is no investigation.

- *Want information about a specific topic?*

  Our Resources page explains the types of employment discrimination covered by the EEOC's laws as well as the legal requirements you need to know.

We can also direct you to other federal agencies for information on issues such as minimum wage and overtime pay or family and medical leave. The Resources page gives a link to small business assistance from the SBA and provides information on the Small Business Regulatory Enforcement Fairness Act (SBREFA), which allows small businesses to comment on federal agency enforcement actions to the SBA Ombudsman.

You can order our Publications online free of charge or print them for use. You can also order the EEOC's poster, "EEO Is The Law," here.

**For more information and assistance call the EEOC toll-free at 1-800-669-4000 or use our sign language access line at 1-844-234-5122 (ASL Video Phone)**



**U.S. Equal Employment Opportunity Commission**
**<u>Notification & Acknowledgement of Dual-Filed Charge</u>**

(This Notice replaces EEOC FORM 212-A)

06/28/2022

EEOC Number: 510-2022-00380
FEPA Number:

This is notice that a charge of employment discrimination, Mr. Matthew Dory v. UNITED AIRLINES was initially received by Miami District Office on 10/26/2021 and will be dual-filed with Florida Commission On Human Relations.

Pursuant to the worksharing agreement, the Miami District Office intends to Investigate Charge.

The Florida Commission On Human Relations acknowledges receipt of the referenced charge, Mr. Matthew Dory v. UNITED AIRLINES, and intends to Defer Investigation.

| Issued by: | Issued on: |
|---|---|
| Miami District Office | 06/28/2022 |

| Acknowledged by: | Acknowledged on: |
|---|---|
| Florida Commission On Human Relations | 06/28/2022 |

EEOC MIAMI DISTRICT OFFICE
RECEIVED 10/02/2021
EEOC CHARGE NUMBER: 510-2022-00380



The Invictus Law Firm, P.A.
424 E. Central Blvd., Suite 156
Orlando, Florida 32801

VIA EMAIL

02 October 2021

U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, FL 33131

Re: Complaint by Mr. Matthew Dory Against United Airlines

To Whom It May Concern:

Our firm has the honor and privilege of representing Mr. Matthew Dory. Please allow this letter to serve as our letter of representation in regard to Mr. Dory's Charge of Discrimination against United Airlines, which we file on behalf of our client.

My name is Augustus Invictus. Our mailing address is in the header above. I can be reached by email at InvictusPA@protonmail.com and by phone at 407.900.2848.

Our client's name is Matthew Dory. Mr. Dory is a white male, born (b) (7)(C), 1967 (age 54). His mailing address is 1753 Stafford Drive, Belle Isle, Florida 32809, and his phone number is 407.375.5187. Mr. Dory's information is provided at the request of the EEOC; please direct all communications to our office.

We thank you very much for your time and look forward to your reply.

Sincerely,

Augustus Invictus, Esq.

Enclosures: Charge of Discrimination; Statement of Particulars

1

| | |
|---|---|
| **From:** | The Invictus Law Firm, P.A. <InvictusPA@protonmail.com> |
| **Sent:** | Saturday, May 14, 2022 9:27 PM |
| **To:** | LUIS OLIVARES |
| **Subject:** | RE: 510-2022-00380 Dory v. United Airlines |
| **Attachments:** | Dory Rebuttal to United Position Statement  14 May 2022.pdf |

Mr. Olivares,

Please find attached a copy of our rebuttal to the Position Statement of United Airlines. As I mentioned when we spoke over the phone, Mr. Dory's case is not in "My Cases" in the EEOC Portal. Please let me know if you need me to submit this rebuttal in some form other than email.

I had asked your predecessor about how I was to submit a sealed witness list for your investigation. He told me that I should wait until after mediation fell through to provide it. As the witness statements are part of our rebuttal and integral to the Charge, I would like to know how I am to submit the witness list at this point.

Thank you, as always, for your time.

Best Regards,


Augustus Invictus, Esq.
The Invictus Law Firm, P.A.
424 E. Central Blvd. #731
Orlando, Florida 32801
Email: InvictusPA@protonmail.com
Phone: 407.900.2848

This electronic communication is privileged and confidential. DO NOT read, copy, or disseminate this communication unless you are the intended addressee.

This email communication contains confidential and/or privileged information intended only for the addressee. Anyone who receives this email by error should treat it as confidential and is asked to reply by email: InvictusPA@protonmail.com.

This email transmission may not be secure and may be illegally intercepted. Do not forward or disseminate this email to any third party. Unauthorized interception of this email is a violation of federal law.


Sent with ProtonMail secure email.

------- Original Message -------
On Monday, May 2nd, 2022 at 10:51 AM, LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV> wrote:



The deadline is May 14th 2022.



**From:** The Invictus Law Firm, P.A. <InvictusPA@protonmail.com>
**Sent:** Monday, May 2, 2022 9:57 AM

**To:** LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV>
**Subject:** RE: 510-2022-00380 Dory v. United Airlines

Thank you, Mr. Olivares. What is our deadline for responding to this Position Statement?

Best Regards,

Augustus Invictus, Esq.

The Invictus Law Firm, P.A.

424 E. Central Blvd. #731

Orlando, Florida 32801

Email: InvictusPA@protonmail.com

Phone: 407.900.2848

**This electronic communication is privileged and confidential.** DO NOT read, copy, or disseminate this communication unless you are the intended addressee.

This email communication contains confidential and/or privileged information intended only for the addressee. Anyone who receives this email by error should treat it as confidential and is asked to reply by email: InvictusPA@protonmail.com.

This email transmission may not be secure and may be illegally intercepted. Do not forward or disseminate this email to any third party. Unauthorized interception of this email is a violation of federal law.

Sent with ProtonMail secure email.

------- Original Message -------
On Monday, May 2nd, 2022 at 9:54 AM, LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV> wrote:

Att. Invictus,

Please see attached for requested Position statement.

Thank you

Luis Olivares

Bilingual Investigator (Spanish)

U.S. Equal Employment Opportunity Commission

Miami District Office

C: 609-216-5684 (Preferred)

Email: Luis.Olivares@eeoc.gov

**From:** The Invictus Law Firm, P.A. <InvictusPA@protonmail.com>
**Sent:** Monday, May 2, 2022 5:59 AM
**To:** LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV>
**Subject:** RE: 510-2022-00380 Dory v. United Airlines

Good morning. I have been in trial in South Carolina and have just now received this email. Logging into the portal, I see a blank screen under My Cases (see attached). I cannot see Mr. Dory's case, and I do not have your position statement. If you would help me to retrieve your position statement so that we can draft a rebuttal, I would be greatly appreciative.

Best Regards,

Augustus Invictus, Esq.

The Invictus Law Firm, P.A.

424 E. Central Blvd. #731

Orlando, Florida 32801

Email: InvictusPA@protonmail.com

Phone: 407.900.2848

**This electronic communication is privileged and confidential.** DO NOT read, copy, or disseminate this communication unless you are the intended addressee.

This email communication contains confidential and/or privileged information intended only for the addressee. Anyone who receives this email by error should treat it as confidential and is asked to reply by email: InvictusPA@protonmail.com.

This email transmission may not be secure and may be illegally intercepted. Do not forward or disseminate this email to any third party. Unauthorized interception of this email is a violation of federal law.

Sent with ProtonMail secure email.

------- Original Message -------
On Thursday, March 24th, 2022 at 9:58 AM, LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV> wrote:

Good morning,

I just released the Position statement for you to provide a rebuttal.

Thank you

Luis Olivares

Bilingual Investigator (Spanish)

U.S. Equal Employment Opportunity Commission

Miami District Office

C: 609-216-5684 (Preferred)

Email: Luis.Olivares@eeoc.gov

**From:** The Invictus Law Firm, P.A. <InvictusPA@protonmail.com>
**Sent:** Wednesday, March 23, 2022 4:03 PM
**To:** LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV>
**Subject:** RE: 510-2022-00380 Dory v. United Airlines

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Good afternoon, Mr. Olivares. I am just writing to check in on the status of this case.

Best Regards,

Augustus Invictus, Esq.

The Invictus Law Firm, P.A.

424 E. Central Blvd. #731

Orlando, Florida 32801

Email: InvictusPA@protonmail.com

Phone: 407.900.2848

This electronic communication is privileged and confidential. DO NOT read, copy, or disseminate this communication unless you are the intended addressee.

This email communication contains confidential and/or privileged information intended only for the addressee. Anyone who receives this email by error should treat it as confidential and is asked to reply by email: InvictusPA@protonmail.com.

This email transmission may not be secure and may be illegally intercepted. Do not forward or disseminate this email to any third party. Unauthorized interception of this email is a violation of federal law.

Sent with ProtonMail secure email.

------- Original Message -------
On Thursday, January 13th, 2022 at 5:14 PM, LUIS OLIVARES
<LUIS.OLIVARES@EEOC.GOV> wrote:

> Att, Invictus,

> Good afternoon and my apologies on the delayed
> response. The Commission is waiting on the Position
> Statement. I will contact them tomorrow to follow up.

> Thank you

> Luis Olivares

> Bilingual Investigator (Spanish)

> U.S. Equal Employment Opportunity Commission

> Miami District Office

> C: 609-216-5684 (Preferred)

> Email: Luis.Olivares@eeoc.gov

> **From:** The Invictus Law Firm, P.A.
> <InvictusPA@protonmail.com>
> **Sent:** Tuesday, December 14, 2021 2:11 PM
> **To:** LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV>
> **Subject:** 510-2022-00380 Dory v. United Airlines

> Mr. Olivares,

I spoke with Mr. Hamilton yesterday, who informed me that United Airlines refused mediation in this case. He advised me to contact you for a status update.

Also, I was not able to submit a witness list, either through Mr. Ocampo or Mr. Hamilton, so please let me know how we are to get you anything and everything you need from our end.

Thank you for your time.

Best Regards,

Augustus Invictus, Esq.

The Invictus Law Firm, P.A.

424 E. Central Blvd. #731

Orlando, Florida 32801

Email: InvictusPA@protonmail.com

Phone: 407.900.2848

Website: https://augustusinvictus.com/

LinkedIn: https://www.linkedin.com/in/augustusinvictus/

Twitter: https://twitter.com/EmperorInvictus

Facebook: https://www.facebook.com/InvictusPA/

YouTube: https://www.youtube.com/c/AugustusInvictus

This electronic communication is privileged and confidential. DO NOT read, copy, or disseminate this communication unless you are the intended addressee.

7

This email communication contains confidential and/or privileged information intended only for the addressee. Anyone who receives this email by error should treat it as confidential and is asked to reply by email: InvictusPA@protonmail.com.

This email transmission may not be secure and may be illegally intercepted. Do not forward or disseminate this email to any third party. Unauthorized interception of this email is a violation of federal law.

Sent with ProtonMail Secure Email.



The Invictus Law Firm, P.A.
424 E. Central Blvd., Suite 731
Orlando, Florida 32801

VIA EMAIL

14 May 2022

U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 SE 2nd Street, Suite 1500
Miami, FL 33131

Re:     Matthew Dory v. United Airlines, Inc.
        EEOC Charge No. 510-2022-00380

To Whom It May Concern:

Mr. Matthew Dory submits his rebuttal to the position statement of United Airlines dated 31 January 2022. In brief, Mr. Dory's claim is not time-barred, and the termination of Mr. Dory was part of the overt, widely publicized, and explicitly discriminatory policy against older white males at United Airlines, Inc., which policy continues to this day.

I.      The Charge Allegations Are Not Time-Barred.

Mr. Dory stated in his Charge that United Airlines discriminated against him in his termination, which process actually concluded upon the denial of his grievance, and in the company's overall discriminatory policy against older white males, which created a hostile work environment.

First, United argues that the date of the letter sent by John Wertz on 10 September 2020 is the beginning of the 300-day window for filing an EEOC Charge. This is inaccurate. The date of the letter was not the date of Mr. Dory's actual termination: the grievance denial was the date of actual termination. This is evidenced by the conduct of United Airlines. In its negotiations with the Union, United offered to allow Mr. Dory to "resign" rather than be terminated. A week later, United offered to allow Mr. Dory to "retire" rather than be terminated. Both of these offers to Mr. Dory, either to "resign" or to "retire," indicate that the letter of 10 September 2020 was simply the initiation of termination proceedings against Mr. Dory, not the actual termination date. The denial of his grievance, 29 March 2021, was the actual termination date.

Second, the allegations are not time-barred because the most recent discriminatory action was the denial of the grievance, which was alleged in the Charge. United's Position Statement cites *AMTRAK v. Morgan*, 536 U.S. 101 (2002) to argue that the singular event determining the 300-day period was the letter sent to Mr. Dory on 10 September 2020. As Mr. Dory has alleged in the Charge, the denial of the grievance was discriminatory, as well, as a similarly situated person

who was not an older, white male would have been reinstated upon the filing of a grievance. Moreover, Mr. Dory was told after receipt of the letter and during the grievance process that the denial of his grievance was a foregone conclusion because "United is going to make an example out of [him]."[1] The reason for wanting to make an example of Mr. Dory is the company's pursuit of its "woke" agenda that seeks to replace older white males with literally anyone who is not a white male. Thus, it is eminently reasonable to determine that the 300-day window began at the denial of the grievance, as this was itself a discriminatory act in furtherance of "setting an example" and reinforcing the company's discriminatory policies against older white males. Moreover, as stated above, the grievance denial was the date of actual termination in this case.

Third, even if the date of the letter was the only date to be considered as the final discriminatory action, the same case cited by United Airlines states that the 300-day rule is subject to the doctrines of "waiver, estoppel, and equitable tolling 'when equity so requires.'" *Id.* at p.19; *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Supreme Court noted that "[t]he application of equitable doctrines . . . may . . . toll the time period within which an employee must file a charge." *AMTRAK* at 2. In the instant case, Mr. Dory relied on the representations of the Union and, by extension, his attorney for the grievance process, that he could not pursue any remedies outside of the grievance procedure until the grievance procedure was concluded and he was released by the attorney. Mr. Dory's reliance upon the advice of counsel and the Union cannot be considered a lack of diligence.

Fourth, United's contention that the termination date is the only date that matters is an argument predicated upon Mr. Dory's charge being an allegation concerning one, specific instance of discrimination. In fact, United's Position Statement attempts to sidestep the real claim of Mr. Dory, which is that the companywide policies of United Airlines are overtly, brazenly, and notoriously discriminatory against older, white males. Mr. Dory's Charge clearly and specifically alleged that the company has created a hostile work environment for white males in general, but specifically older, white males. Because Mr. Dory's Charge alleges a hostile work environment, because United planned to make an example of Mr. Dory by denying his grievance, and because the grievance denial was the actual date of termination, the 300-day window does not begin at the date of the letter but at the date his grievance was denied.

Fifth, in cases in which a delay in filing has occurred, "the federal courts have the discretionary power 'to locate a just result' in the light of the circumstances peculiar to the case." *AMTRAK*, quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424 (1975). Should the Commission determine that the 300-day window should have begun at the date of the letter and not the date of actual termination, the Charge should not be dismissed for that reason, as the circumstances peculiar to Mr. Dory's case render dismissal inequitable. At the very least, United should be required to demonstrate (1) that the late filing was due to a lack of diligence on the part of Mr. Dory, who was instructed that he must wait for the conclusion of the grievance procedure to pursue other remedies, and (2) that United is prejudiced by the tardiness of the filing. *See AMTRAK* at 19 (quoting *Kansas v. Colorado*, 514 U.S. 673, 687 (1995)).

II.      United's Actions against Mr. Dory Were Part of an Overt, Widely Publicized Campaign of Discrimination against White Males.

Mr. Dory's gratuitous use of the word "nigger," while offensive, does not nullify federal law, which presumably protects white males as well as black males. In an apparent effort to shock

---

[1] This witness is named in the witness list proffered to the Commission under seal.

the conscience of the reader, United's Position Statement leads with five texts using the word "NIGGER" in all capital letters, as though the offensiveness of the word itself should outlaw Mr. Dory from protection by the Civil Rights Act. Yet nowhere in the Civil Rights Act did the Legislature state that the use of a racial slur – off the clock and off premises – triggers forfeiture of legal protections under the Act from otherwise illegal action by an openly discriminatory corporation.

United's Position Statement argues that Mr. Dory has not sufficiently identified persons similarly situated who were not older white males and who were not terminated from their employment. Mr. Dory has proffered a sealed witness list to the Commission for the purposes of investigating the Charge, but the following list of similarly situated persons not terminated should suffice to prevent dismissal of the Charge in the meantime:

- Kurt Nichols, a black man employed by United Airlines, called his lead mechanic, Kent Nelson, a white male employed United Airlines, his "MASSA" (Ebonics for "Master") in a derogatory way on a regular basis. Nichols repeatedly made racist remarks to Nelson, including, "Don't tie me up in the sun and beat me today, Massa." On another occasion, Nelson asked Nichols about the status of his assignment, to which Nichols responded by falling to his knees and grabbing Nelson's feet, begging Nelson not to beat him, saying, "I KNOW I'M JUST A LAZY NIGGER, DON'T BEAT ME, MASSA, PLEASE DON'T BEAT ME." Nelson was very upset and tried to free himself from Nichols, who repeated the statement over and over again until Nelson could free himself. The black man was not terminated.

- Ken Sylman, a black man employed by United Airlines, on many occasions called Jim DiGiuseppi, a white man employed by United Airlines, a "FUCKING CRACKER." This was witnessed by John Wertz, who wrote the termination letter to Mr. Dory. The black man was not terminated.

- Danilo Paulino, a black man employed by United Airlines, called persons of every race and sexual orientation a "FAGGOT." The black man was not terminated.

- Scott Kern, a transexual, was called a "FAGGOT TRANNY" by numerous black men employed by United Airlines. None of these black men were terminated.

- Minh Hung, an Asian male employed by United Airlines, while armed with a knife, aggressively approached a black male employed by United Airlines but was stopped before a stabbing occurred. The Asian man was not terminated. Admittedly, he did not use any naughty language.

If United Airlines – or any company – publicized a policy that promoted all other groups at the expense of, say, Mongolian females, then the termination of a Mongolian female would be facially discriminatory, unless the company could provide a legitimate, non-discriminatory reason for the termination. If the allegedly legitimate, non-discriminatory reason for the termination was that the Mongolian female used the word "NIGGER," while numerous persons who were not Mongolian females were using the same word and other racial epithets and slurs but were not terminated from their employment, then that allegedly legitimate, non-discriminatory reason is

clearly pretextual. Inserting "white male" in the place of "Mongolian female," it is clear that United's termination of Mr. Dory was entirely pretextual. Otherwise, United Airlines would be forced to fire its entire mechanical staff, the culture of the airline mechanical industry being notoriously raunchy and flooded with profane machismo.

United Airlines states that John Wertz, the author of the termination letter, is "a member of the same protected classes as Mr. Dory," and argues that this undermines "any inference of discriminatory animus." United, however, fails to note that Mr. Wertz, an older, white male, has the same threat of termination as Mr. Dory, should he ever challenge the company's discriminatory policies or otherwise step out of line. United's statement that Mr. Dory was not the subject of discrimination because an older, white male began the termination process is akin to a white plantation owner claiming that his black field worker was not the subject of discrimination because the field's overseer was a black man on horseback with a shotgun. After all, one would not give a horse and a shotgun – or a management position and the power of termination – to someone being discriminated against.

Moreover, it must be noted that the discriminatory policies of United Airlines are not inferred from circumstantial anecdotes but are explicitly and widely publicized by the company itself. Television ads, social media campaigns, and magazine interviews with United Airlines executives all trumpet the agenda of the company: to "diversify" the workplace by replacing white males. Mr. Dory's termination was neither a legitimate firing for use of naughty language nor an isolated incident of discrimination: the termination was a deliberate display of the company's discriminatory agenda: older, white men are on their way out.

III.    Conclusion

Mr. Dory asks that the Commission consider these facts in their totality, including the conduct of Mr. Dory, United Airlines, and all other employees, combined with the overt, widely publicized company policies at United. Mr. Dory then asks that the Commission to consider whether it would be discrimination if this happened not to an older, white male, but to a young, black male. Were the roles reversed, there is no question that United Airlines is presently engaged in an openly discriminatory scheme, from mechanics to pilots and everyone in between, and that Mr. Dory was the victim of that policy. Accordingly, we ask that the Commission fully investigate this Charge and file litigation against United Airlines.

Sincerely,

Augustus Invictus, Esq.

4

**From:**          LUIS OLIVARES
**Sent:**          Friday, January 14, 2022 1:09 PM
**To:**            Megan.Detzner@united.com
**Subject:**       EEOC Charge No.: 510-2022-00380

Charging Party: Matthew Dory
EEOC Charge No.: 510-2022-00380

Dear  Detzner:

Your organization is hereby requested to submit information and records relevant to the subject charge of discrimination. The Commission is required by law to investigate charges filed with it, and the enclosed request for information does not necessarily represent the entire body of evidence which we need to obtain from your organization in order that a proper determination as to merits of the charge can be made. Please submit a response to the requested information by the deadline cited below.

The information will only be disclosed in accordance with 29 C.F.R. 1601.22, or otherwise made public if the charge results in litigation.

Response Deadline Date: January 21, 2022

The following dates are considered to be the "relevant period" for the attached Request for Information:
January 1, 2020 - January 1, 2022

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## REQUEST FOR INFORMATION

Charging Party: Matthew Dory
Respondent: UNITED AIRLINES
EEOC Charge No.: 510-2022-00380

1. Give the correct name and address of the facility named in the charge.

2. State the total number of persons who were employed by your organization during the relevant period. Include both full and part-time employees. How many employees are employed by your organization at the present time?

3. Supply an organizational chart, statement, or documents which describe your structure, indicating, if any, the relationship between it and superior and subordinate establishments within the organization.

4. Supply a statement or documents which identify the principal product or service of the named facility.

5. State the legal status of your organization, i.e., corporation, partnership, tax-exempt non-profit, etc. If incorporated, identify the state of incorporation.

6. State whether your organization has a contract with any agency of the federal government or is a subcontractor on a project which receives federal funding. Is your organization covered by the provisions of Executive Order 11246? If your answer is yes, has your organization been the subject of a compliance review by the OFCCP at any time during the past two years?

7. Submit a written position statement on each of the allegations of the charge, accompanied by documentary evidence and/or written statements, where appropriate. Also include any additional information and explanation you deem relevant to the charge.

8. Submit copies of all written rules, policies and procedures relating to the issue(s) raised in the charge. If such does not exist in written form, explain the rules, policies and procedures.

Issue: DISCHARGE

1. If the charging party was discharged, submit the following:
    a. date of discharge,
    b. reason for discharge,
    c. statement of whether the charging party had any right of appeal, and whether the charging party made use of any appeal rights
    d. person recommending the discharge, including name, position held,
    e. person making final decision to discharge the charging party, including name, position held. Attach copy of any evaluation or investigation report relating to the discharge, and
    f. copies of all pertinent documents in the charging party's personnel file relating to the subject discharge.

2. Explain your discharge procedures in effect at the time of the alleged violation.  If the procedures are in writing, submit a copy.

3. Submit copies of all written rules relating to employee duties and conduct.  Explain how employees learn the contents and rules.

4. List all employees who committed the same or substantially similar offense(s) that the charging party committed and the disciplinary action taken against them.  Supply backup documentation for the list.  Include name, position title.

5. List all the employees discharged within the relevant period.  For each employee, include employees name, position title, reason for and date of discharge, and a copy of the separation notice.

Issue: DISCIPLINE

1. Submit copies of and/or explain all written rules relating to employee duties, conduct, and discipline for the charging party's job classification or department during the relevant period of time.  Explain how an employee learns the contents of the rules and disciplinary procedure. If the disciplinary system is progressive, explain its structure, penalties, and mode of operation.

2. Submit copies of all records considered in taking this most recent disciplinary action against the charging party.  If an action is not documented by a written record, state the offense and the resulting action, and explain why it was not recorded.  For each disciplinary action taken against the charging party for the relevant period, explain in detail when, how, and by whom the charging party was notified of each action, the nature of the action, dates, and reasons why action was taken. State the name, and position of the person responsible for taking each action.

3. List all employees who received disciplinary action during the relevant period in the charging party's job classification or department.  Include employee's name, date of hire, whether probationary or not. For each person listed, describe each disciplinary action by:
    a. date of the disciplinary action(s)
    b. reason for disciplinary action(s),
    c. type of disciplinary action(s) taken,
    d. disciplinary record of employee prior to the instant issue, and
    e. person imposing the penalty, include name, position title
Submit all documents which relate to any and all of the above disciplinary actions taken against the individuals listed above.

Issue: HARASSMENT

1. State whether your organization has adopted any procedure by which an employee may register a complaint of harassment by co-workers or supervisors. If your answer is yes, describe and, if written,

submit a copy of such procedures.  Explain how these procedures are communicated to employees and supervisory personnel.

2. State whether the charging party complained to any supervisor or manager regarding the conduct described in the Charge of Discrimination.  If your answer is yes, identify the person or persons with whom the complaint was registered and describe each and every action taken by your organization in response to that complaint.  Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

3. State whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charge of Discrimination.  If the answer is yes, please list the following:
      a. name, position, of individual placing the complaint,
      b. name, position, of supervisor or manager, and
      c. any actions taken by your organization in response to the complaint.
Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

4. Identify every individual who, to your knowledge, has information relevant to the allegations.  For each such individual, provide the following:
      a. name, position,
      b. whether a present or former employee (if applicable), and
      c. address and telephone number.

5. Identify the other employees who worked with the charging party during the relevant period. Include:
      a. name, position,
      b. last known address and telephone.
Submit copies of daily assignment sheets, time cards, attendance and payroll records for the individuals listed in #5, including the charging party.


Thank you

Luis Olivares
Bilingual Investigator (Spanish)
U.S. Equal Employment Opportunity Commission
Miami District Office
C: 609-216-5684 (Preferred)
Email: Luis.Olivares@eeoc.gov

**From:** Detzner, Megan <Megan.Detzner@united.com>
**Sent:** Tuesday, January 18, 2022 8:24 PM
**To:** LUIS OLIVARES
**Subject:** RE: [EXTERNAL] EEOC Charge No.: 510-2022-00380

Hello Mr. Olivares.

I am in receipt of your email.

I realize we are behind on our submission and we are working on it.

I can get it to you by 1/28 – we just need to wrap up a few additional details.

Thank you for understanding – I was tied up unexpectedly due to my family getting Covid.

If you need to discuss this with me, please let me know.

Megan Detzner
Director, EEO Compliance
United Airlines – Corporate Support Center
233 South Wacker Drive - 11th Floor
Chicago, IL 60606
Cell -630-329-6791
Email: megan.detzner@united.com

---

**From:** LUIS OLIVARES <LUIS.OLIVARES@EEOC.GOV>
**Sent:** Friday, January 14, 2022 12:09 PM
**To:** Detzner, Megan <Megan.Detzner@united.com>
**Subject:** [EXTERNAL] EEOC Charge No.: 510-2022-00380

This message was sent from outside of United Airlines. Please do not click links or open attachments unless you recognize the sender and know that the content is safe.

Charging Party: Matthew Dory
EEOC Charge No.: 510-2022-00380

Dear  Detzner:

Your organization is hereby requested to submit information and records relevant to the subject charge of discrimination. The Commission is required by law to investigate charges filed with it, and the enclosed request for information does not necessarily represent the entire body of evidence which we need to obtain from your organization in order that a proper determination as to merits of the charge can be made. Please submit a response to the requested information by the deadline cited below.

The information will only be disclosed in accordance with 29 C.F.R. 1601.22, or otherwise made public if the charge results in litigation.

1

Response Deadline Date: January 21, 2022

The following dates are considered to be the "relevant period" for the attached Request for Information:
January 1, 2020 - January 1, 2022

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**REQUEST FOR INFORMATION**

Charging Party: Matthew Dory
Respondent: UNITED AIRLINES
EEOC Charge No.: 510-2022-00380

1. Give the correct name and address of the facility named in the charge.

2. State the total number of persons who were employed by your organization during the relevant period. Include both full and part-time employees. How many employees are employed by your organization at the present time?

3. Supply an organizational chart, statement, or documents which describe your structure, indicating, if any, the relationship between it and superior and subordinate establishments within the organization.

4. Supply a statement or documents which identify the principal product or service of the named facility.

5. State the legal status of your organization, i.e., corporation, partnership, tax-exempt non-profit, etc. If incorporated, identify the state of incorporation.

6. State whether your organization has a contract with any agency of the federal government or is a subcontractor on a project which receives federal funding. Is your organization covered by the provisions of Executive Order 11246? If your answer is yes, has your organization been the subject of a compliance review by the OFCCP at any time during the past two years?

7. Submit a written position statement on each of the allegations of the charge, accompanied by documentary evidence and/or written statements, where appropriate. Also include any additional information and explanation you deem relevant to the charge.

8. Submit copies of all written rules, policies and procedures relating to the issue(s) raised in the charge. If such does not exist in written form, explain the rules, policies and procedures.

Issue: DISCHARGE

1. If the charging party was discharged, submit the following:
    a. date of discharge,
    b. reason for discharge,
    c. statement of whether the charging party had any right of appeal, and whether the charging party made use of any appeal rights
    d. person recommending the discharge, including name, position held,
    e. person making final decision to discharge the charging party, including name, position held. Attach copy of any evaluation or investigation report relating to the discharge, and
    f. copies of all pertinent documents in the charging party's personnel file relating to the subject discharge.

2. Explain your discharge procedures in effect at the time of the alleged violation.  If the procedures are in writing, submit a copy.

3. Submit copies of all written rules relating to employee duties and conduct.  Explain how employees learn the contents and rules.

4. List all employees who committed the same or substantially similar offense(s) that the charging party committed and the disciplinary action taken against them.  Supply backup documentation for the list.  Include name, position title.

5. List all the employees discharged within the relevant period.  For each employee, include employees name, position title, reason for and date of discharge, and a copy of the separation notice.

Issue: DISCIPLINE

1. Submit copies of and/or explain all written rules relating to employee duties, conduct, and discipline for the charging party's job classification or department during the relevant period of time.  Explain how an employee learns the contents of the rules and disciplinary procedure. If the disciplinary system is progressive, explain its structure, penalties, and mode of operation.

2. Submit copies of all records considered in taking this most recent disciplinary action against the charging party.  If an action is not documented by a written record, state the offense and the resulting action, and explain why it was not recorded.  For each disciplinary action taken against the charging party for the relevant period, explain in detail when, how, and by whom the charging party was notified of each action, the nature of the action, dates, and reasons why action was taken. State the name, and position of the person responsible for taking each action.

3. List all employees who received disciplinary action during the relevant period in the charging party's job classification or department.  Include employee's name, date of hire, whether probationary or not. For each person listed, describe each disciplinary action by:
    a. date of the disciplinary action(s)
    b. reason for disciplinary action(s),
    c. type of disciplinary action(s) taken,
    d. disciplinary record of employee prior to the instant issue, and
    e. person imposing the penalty, include name, position title
Submit all documents which relate to any and all of the above disciplinary actions taken against the individuals listed above.

Issue: HARASSMENT

1. State whether your organization has adopted any procedure by which an employee may register a complaint of harassment by co-workers or supervisors. If your answer is yes, describe and, if written,

submit a copy of such procedures.  Explain how these procedures are communicated to employees and supervisory personnel.

2. State whether the charging party complained to any supervisor or manager regarding the conduct described in the Charge of Discrimination.  If your answer is yes, identify the person or persons with whom the complaint was registered and describe each and every action taken by your organization in response to that complaint.  Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

3. State whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charge of Discrimination.  If the answer is yes, please list the following:
      a. name, position, of individual placing the complaint,
      b. name, position, of supervisor or manager, and
      c. any actions taken by your organization in response to the complaint.
Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

4. Identify every individual who, to your knowledge, has information relevant to the allegations.  For each such individual, provide the following:
      a. name, position,
      b. whether a present or former employee (if applicable), and
      c. address and telephone number.

5. Identify the other employees who worked with the charging party during the relevant period. Include:
      a. name, position,
      b. last known address and telephone.
Submit copies of daily assignment sheets, time cards, attendance and payroll records for the individuals listed in #5, including the charging party.

Thank you

Luis Olivares
Bilingual Investigator (Spanish)
U.S. Equal Employment Opportunity Commission
Miami District Office
C: 609-216-5684 (Preferred)
Email: Luis.Olivares@eeoc.gov



**Megan Detzner**
Director, EEO Compliance
Legal – WHQLD
Office/Cell 630-329-6791
Fax 872-825-0310
megan.detzner@united.com

January 31, 2022

**VIA ELECTRONIC SUBMISSION
TO EEOC PORTAL**

Investigator
U.S. Equal Employment Opportunity Commission
C/O Mr. Marvin Frazier
Miami District Office
Miami Tower – 100 S E 2nd Street
Suite 1500
Miami, FL 33131

Re:     **Matthew Dory v. United Airlines, Inc.
EEOC Charge No. 510-2022-00380**

Dear Mr. Frazier,

    Respondent United Airlines, Inc. ("United") submits this position statement in response to the above-referenced Charge of Discrimination filed by Matthew Dory ("Mr. Dory").[1] United denies Mr. Dory's allegations of race (white), sex (male), and age (53)[2] discrimination. As detailed below, the Charge allegations are time-barred and/or improperly asserted against United as they relate to Mr. Dory's union representation. Even if the Charge was timely (which it is not), Mr. Dory's employment was terminated

---

[1] This position statement is based upon an investigation of the facts at the time of the writing. By submitting this position statement, however, United in no way waives its rights to present new or additional facts or arguments based upon subsequently acquired information or evidence. Further, this position statement, while believed to be true and correct, does not constitute an affidavit and is not intended to be used as evidence of any kind in any court or administrative proceeding, including those before or any federal, state, or local tribunal. This statement of position is intended solely for the purposes of this agency's investigation and settlement discussions between the parties. United expressly reserves and does not waive any rights and defenses (including procedural rights and defenses) that may exist with respect to the instant Charge.

[2] In this position statement, United refers to individual's ages at the time of Mr. Dory's employment termination on September 10, 2020.

---

A STAR ALLIANCE MEMBER 

because he admittedly sent profane, racially derogatory text messages about a co-worker and his wife on at least two occasions—not due to any alleged protected characteristic.

## I.      UNITED'S RELEVANT POLICIES

United is committed to fostering a diverse work force. To that end, United provides equal opportunity to all employees without regard to age, citizenship, color, disability, gender, gender identity, genetic information, national origin, pregnancy, race, religion, sexual orientation, or veteran status (or any other protected category under applicable law). United provides equal employment in hiring, training, promotion, transfers, compensation, benefits, leaves of absences and decisions about discipline or termination of employment.

United's policies, called The Working Together Guidelines, require that employees treat each other with dignity and respect and prohibit harassment and discrimination of any kind. All employees are expected to work to achieve a workplace free of discrimination and harassment on the basis of age, citizenship, color, disability, gender, gender identity, genetic information, national origin, pregnancy, race, religion, sexual orientation, or veteran status (or any other protected category under applicable law) and to report concerns promptly. The Working Together Guidelines explicitly state that prohibited conduct can include that which occurs off-duty that impacts the workplace and that "epithets or slurs" violate United's policies.

Also relevant to this matter are United's Working Together Guidelines expectations of professionalism in acting in ways that reflect favorably upon the company, the employee, and their coworkers and refraining from aggressive or threatening behavior, and the responsibility of using good judgment and open communication in decision making.

## II.     FACTUAL BACKGROUND

### Mr. Dory's Employment with United

Mr. Dory began working for United's corporate predecessor in August 1987. During the time period relevant to the Charge, Mr. Dory held the position of Composite Tech Shop – Line at Orlando International Airport (MCO) and reported to John Wertz (White, male, age 54). The terms and conditions of Mr. Dory's employment were subject to the Collective Bargaining Agreement ("CBA") negotiated between United and the International Brotherhood of Teamsters (IBT). The CBA governs pay, work schedule, benefits, various work rules, and other terms and conditions of employment. The CBA also provides for investigation and appeal processes with respect to Airline Technician discipline and termination.

### Mr. Dory Admits Sending Profane, Racially Derogatory
### Text Messages About a Co-Worker and his Wife

On or about July 30, 2020, Timothy Jackson (Black, male, 39) informed United that Mr. Dory sent text messages to several of their coworkers in which Mr. Dory repeatedly referred to Mr. Jackson using racial slurs, including:

- "Niggers FUCK shit UP ….. They always have and they always will ….."
- "And that FUCKIN NIGGER JACKSON is FUCKING MY LIFE UP!!!! My GRANDFATHER was absolutely right …."
- "Niggers FUCK UP PEOPLE'S LIVES ….. That is what they do …."
- "I tried to wake up with a good attitude by that stupid fucking NIGGER RACIST TIMMY is still on my mind"
- "[Mr. Dory's wife] is still HELL BENT on making that NIGGER pay …"

Mr. Dory's profanity laced tirade also referred to Mr. Jackson as an "asshole" and "DUMBFUCK" and to Mr. Jackson's wife, who is half-Asian, as a "cunt" and a "CUNT dog and cat eating CUNT [sic] CHINC." He stated that with respect to Mr. Jackson and his wife: "I wish nothing but HELL for those FUCKING FAGGOT pieces of shit."

Although Mr. Jackson was not a direct recipient of Mr. Dory's text messages, several co-workers notified him of these messages on or about July 12, 2020. After learning of Mr. Dory's messages, Mr. Jackson sent him a text message explaining that his comments were extremely hurtful, disrespectful, and dehumanizing. Mr. Jackson also told Mr. Dory that he had considered him a friend but is done with him. In response, Mr. Dory said, "we just don't understand each other. . . [w]e are all probably FUCKED anyway." Mr. Jackson reported to United that after seeing this callous response, he spoke to Mr. Dory in person to see if he had anything else to say about the matter. Mr. Dory repeated that they "didn't understand each other" and offered no apology. Mr. Jackson further reported that Mr. Dory had previously sent similar text messages about him and his wife to coworkers in September 2019.[3] Mr. Jackson told Mr. Dory at the time that such comments were unacceptable but ultimately chalked it up to Mr. Dory's inebriation at the time he sent the messages.

Molly Driscoll, Corporate Security Investigator (white, female, age 24), investigated Mr. Jackson's allegations. Mr. Dory was suspended with pay pending the outcome of the investigation. On August 5, 2020, Ms. Driscoll interviewed Mr. Jackson and he explained that leading up to the July 2020 text messages, he, Mr. Dory, and other coworkers had been joking about a movie in which one of the actors joked about having to eat their pet to survive. In keeping with this joke, Mr. Jackson sent Mr. Dory a picture of a dog similar to Mr. Dory's over a fire. According to Mr. Jackson, Mr. Dory laughed and did not express that he was offended by the photo.

---

[3] United's records do not reflect that Mr. Jackson reported the September 2019 incident until July 2020.

A STAR ALLIANCE MEMBER 

On August 18, 2020, Ms. Driscoll conducted an investigatory meeting via teleconference with Mr. Dory and IBT Representatives, Thomas Esposito and Mike Blomquist. On August 19, 2020, Mr. Dory provided United with a written statement. Mr. Dory admitted sending the July 2020 text messages described above as well as similar messages in Fall 2019. He stated that Mr. Jackson and other co-workers had been making jokes about "roasting" his dog and that he was *not* offended about the photo until it caused an argument with his wife. He offered the paltry explanation that he sent the text messages out of anger after the photo caused turmoil in his household and he never intended for Mr. Jackson to see them. Mr. Dory claimed that Mr. Jackson screamed and yelled during their in-person conversation and called him a "punk ass bitch." However, Mr. Jackson denied this and co-worker Juan Esquivel (Hispanic/Latino, male, age 43), who witnessed the interaction, corroborated Mr. Jackson's account. Mr. Dory also alleged that Mr. Jackson said he was going punt Mr. Dory's dog across the street and eat it with barbecue sauce. These purported statements were likewise unsubstantiated.

On September 2, 2020, United held a second meeting with Mr. Dory to review the information gathered during the investigation. Mike Garcia (Senior Manager), Viktoria Pokman (HR Manager), John Ellis (Shift Manager), Janice Isabella (Administration Manager), and IBT Representatives Thomas Esposito and Louis Morales also attended. During this meeting, Mr. Dory again admitted sending the profane, racially derogatory text messages about Mr. Jackson and his wife. United determined that termination of Mr. Dory's employment was appropriate under the circumstances, particularly given the seriousness of his misconduct. Mr. Dory's actions were egregious and clearly violated United's Working Together Guidelines. Mr. Wertz issued Mr. Dory a letter terminating his employment effective September 10, 2020.

On September 16, 2020, the IBT submitted a grievance on Mr. Dory's behalf pursuant to the CBA based solely on Mr. Dory's employment termination. In his grievance, Mr. Dory inexplicably attempted to justify sending the text messages as "purely emotionally driven by [his] wife's reaction" to the dog photo and his "frustration of not addressing previous incidents of the same nature." As Mr. Dory acknowledges in his Charge, in or about March 2021, his grievance was denied and the IBT declined to pursue arbitration on his behalf.

## III.   UNITED'S RESPONSE TO CHARGE ALLEGATIONS

### The Charge Allegations are Time-Barred

Mr. Dory's Charge allegations are time barred and should be dismissed. United terminated Mr. Dory's employment on September 10, 2020, but he did not file the instant Charge until October 2, 2021, over a year later. The Charge states that the earliest date the alleged discrimination took place was July 8, 2020. However, Mr. Dory cannot assert claims based on conduct occurring before December 6, 2020, such as his employment termination on September 10, 2020, or any other purported prior conduct. *See* 42 U.S.C. §121117(a); 42 U.S.C. §§2000e-5(e)(1) (requiring a Charging Party to file a charge of discrimination with the EEOC within 300 days of the alleged discrimination); *see Miller-*

*Goodwin v. City of Pan. City Beach*, 385 F. App'x 966 (11th Cir. 2010) (refusing to consider alleged discriminatory acts that occurred prior to the limitations period).

Mr. Dory has apparently attempted to cure his untimely Charge by claiming that the grievance decision and IBT refusal to seek arbitration regarding his employment termination "evidence[] disparate treatment"—stating that March 30, 2021 was the latest date the alleged discrimination took place.  First, Mr. Dory's allegations based on the IBT's action or inaction are illogical on their face as they cannot be attributed to United. Second, as the United States Supreme Court has explained, termination is a discrete act that "occurs" for purposes of Title VII on the day that it happens—not after the conclusion of a grievance procedure. *AMTRAK v. Morgan*, 536 U.S. 101, 111 (2002); *see also Jackson v. Escambia County School District*, No. 3:15cv360/MCR/EMT, 2016 U.S. Dist. LEXIS 134533 (N.D. Fla. Aug. 30, 2016) (noting that "the limitations period is not tolled during the pendency of a grievance or arbitration procedure or other such review of the employment action"). Nonetheless, as discussed in more detail above, Mr. Dory's Charge fails for the additional reason that United terminated his employment because he admittedly sent profane, racially derogatory text messages in violation of United's Working Together Guidelines.

### Mr. Dory Fails to Establish that United's Actions Were Discriminatory

Even if Mr. Dory's Charge was timely, it lacks merit because his own misconduct was the sole cause of United's actions—not his race, sex, or age. As an initial matter, Mr. Dory cannot show that similarly situated, non-white, female, or younger employees were treated more favorably. For example, Mr. Dory fails to identify any other employee who made profane comments containing racial epithets and slurs about a co-worker and was treated more favorably by United. Instead, he vaguely alleges that other employees who engaged dissimilar conduct (*i.e.*, drinking on the job, physical fights) received better outcomes during the grievance process. The only employee identified by name in the Charge is Roger Greenwood, about whom Mr. Dory made a complaint to United in or around 2018, for "making facial gestures and weird sounds" unrelated to any protected characteristic. Although Mr. Greenwood is not similarly situated to Mr. Dory or outside of his protected classes, United states that it investigated Mr. Dory's complaint and issued appropriate discipline to Mr. Greenwood.

Moreover, there is nothing pretextual about United's legitimate non-discriminatory reasons for terminating his employment. Mr. Dory admitted he sent text messages that repeatedly described Mr. Jackson as a "nigger" and his wife as a "[sic] chinc cunt", among other derogatory and profane comments described in further detail above. In his Charge, Mr. Dory describes his text messages as "offensive" but contends they were acceptable because he sent them while off duty and believed they were private. Mr. Dory chose to send these messages to several co-workers despite knowing that his text messages had not been private in the past (for example, in September 2019). Additionally, United's Working Together Guidelines addressing harassment and discrimination expressly state that prohibited conduct can include off-duty conduct that impacts the workplace and that "epithets or slurs" violate United's policies. Further undermining any inference of discriminatory animus, Mr. Wertz is a member of the same protected classes as Mr. Dory with respect to race, sex, and age. Finally, not only are Mr. Dory's assertions that United's Diversity, Equity, and Inclusion efforts are discriminatory absurd and false, they have no

bearing on his claims. Mr. Dory admits that he is not a pilot and does not claim that he was denied entry to or discouraged from applying to United's Aviate Academy. Additionally, the "programs" Mr. Dory identifies in his Charge were implemented well after his employment termination.

## IV.    CONCLUSION AND REQUEST FOR DISMISSAL

As set forth above, Mr. Dory's allegations are wholly meritless. There is no evidence that United discriminated against him based on race (White), sex (male), age (53), or any other protected characteristic. Rather, Mr. Dory's employment was terminated for legitimate non-discriminatory reasons—he admittedly sent profane, derogatory text messages about his co-worker and his co-worker's wife that were rife with racial slurs and epithets. Accordingly, United respectfully requests that Mr. Dory's Charge be dismissed in its entirety.

Sincerely,

/s/ Megan Detzner

Megan Detzner